BENJAMIN F. GIBBS v. JACOB JOHNSON, COVELL C. ROYCE,
AND CHARLES E. BURNS.

[See 63 Mich. 623.]

*Principal and surety—Conditional signing of bond—Estoppel
—Qualification of surety.*

Where a surety executed an attachment bond with the defendant, to
whom he delivered it, on *condition* that a *specified* co-surety should
sign with him, but the names of the sureties were *not* inserted in
the bond, nor was there anything on its face to apprise the
plaintiff, his attorney, or the sheriff of such *condition*, of which
they were not informed by the defendant, who secured *another*
co-surety than the one agreed upon,—

    *Held*, that the *surety* made the defendant his *agent* to see that
the bond was properly executed, and was estopped by his act.[1]

    *Held*, further, that said surety could not defend in a suit on the
bond on the ground that the co-surety obtained by the defendant
was not a *freeholder*, the statute which requires *that* qualification
being for the protection of the sheriff, and not the co-surety.

Error to Delta. (Grant, J.) Argued November 5, 1886.
Decided November 17, 1886.

Debt on attachment bond. Defendants bring error.
Affirmed. The facts are stated in the opinion.

*F. D. Mead (F. O. Clark,* of counsel), for appellants.

*A. R. Northrup (Ball & Hanscom,* of counsel), for plaintiff.

MORSE, J. The plaintiff commenced an attachment suit
in Delta county against the defendant Johnson, who was a
non-resident of this State. The writ was executed by the
seizure of a vessel belonging to him.

The bond sued upon in this suit was given by Johnson as
principal, and the other defendants as sureties, to release the

---

[1] See *Hessell v. Johnson,* 63 Mich. 623.

vessel from the possession of the officer seizing it under such writ.

The defendant Royce filed an affidavit with his plea, denying under oath the execution of the bond upon his part, but upon the trial it was admitted that all the defendants signed the bond.

The defense to the bond was—

1. That the defendant Burns was not a freeholder as required by the statute.

2. That the defendant Royce signed the bond upon the express condition and statement that John K. Stack, who was a freeholder and large property owner in Delta county, would sign the same as his co-surety; and that, when Royce signed the bond, the place for the names of the sureties in the body of the instrument was, as he supposed, filled with the name of himself and the said John K. Stack.

The evidence showed that, at the same time Royce signed this bond, he also signed another one in an attachment case brought by Hessell and Mayotte against Johnson, and for the release of the same vessel from seizure in their suit.[1] The bond in the case of Hessell and Mayotte did contain the name of Stack, written in the body of the same, as surety, but the bond in this case did not contain the name of any surety, the spaces therefor being blank at the time of the execution of the bonds by Royce. Royce claims that the Hessell-Mayotte bond was on the top of the other bond, and, supposing both to be filled in alike, he signed them both without looking at the body of the instrument in suit.

It appears from the testimony that Mr. Northrup, who was the attorney of both Gibbs and Hessell and Mayotte, had some talk with Johnson as to whom he would accept for bondsmen in the two cases, several names being mentioned as acceptable.

Johnson saw Stack, who partly agreed to go upon the bonds. He then went to Royce, and told him that if he

[1]See *Hessell v. Johnson*, 63 Mich. 623.

would sign the bond there would not be any question about Stack's signing it. Royce said: "Well, you go and get Stack's name on, and I will sign the bond;" and then signed it.

Johnson then took the bond to Stack, who declined to sign it. He then went to the sheriff, and told him he could not get Stack. The sheriff and Northrup finally consented to take the defendant Burns, and Johnson obtained his signature. Royce was not consulted or seen further about the matter. The vessel was released the same day.

Upon the trial the court below would not allow the defense that Burns was not a freeholder as affecting his liability, or that of Royce, and we think he was right in so ruling.

The only question submitted to the jury by the circuit judge was the question whether Northrup, the attorney of plaintiff, had knowledge of the fact that defendant Royce signed the bond upon condition that Stack should also sign as his co-surety. He instructed them as follows:

"Now, Mr. Royce claims that notice was given to Northrup, the attorney for Gibbs, of the condition under which he signed this bond. That is the only question that you are to determine and pass upon in this case.

"If you find from the evidence in this case that Covell C. Royce did attach that condition to this bond, that he would sign it upon condition that John K. Stack would sign it, and if Johnson notified Northrup of that fact, and still Mr. Burns' name was taken in place of Stack's, without the consent of Royce,—if that be so, then Royce has a defense to this action; otherwise not.    *    *    *    *

"The burden of proof is upon the defendants. By proving the execution of this bond, and introducing it in evidence, and proving the record of the judgment, the plaintiff has made out his case."

The jury found this issue in favor of the plaintiff, and rendered a verdict, assessing the damages at $1,652.93.

It is not clear from the record that Royce made the delivery of this bond dependent upon the fact of Stack signing it as

a co-surety. Royce says he did not tell Johnson not to deliver the bond to the sheriff unless Stack signed it. He told him he would sign the bond if Stack would, and, upon Johnson's word that Stack would sign it, he signed it, and intrusted it thereafter to Johnson. He learned that Stack had not signed it the same day in the afternoon, but took no steps to disown his liability until suit was brought.

But the circuit judge virtually treated it as a condition, and submitted the question as before stated. With nothing upon the face of this bond to apprise the plaintiff, his attorney, or the sheriff of any such condition being attached to it, there can be no controversy, under the previous decisions of this Court, as to the law being correctly stated by the circuit judge.

Indeed, the counsel for the defendants do not seriously controvert the doctrine laid down in *Brown v. Probate Judge*, 42 Mich. 501, *McCormick v. Bay City*, 23 Id. 457, and other cases cited by plaintiff's counsel in their brief; but they complain of the language of the circuit judge, as a whole, in submitting the case as prejudicial to their clients, and having a tendency to produce upon the minds of the jury a conviction that the defendant Royce was committing a dishonorable act in defending this suit. It is said that, in most forcible language, the circuit judge, in speaking of the defense that Burns was not a freeholder, said:

"The statute requiring two freeholders is for the protection of the sheriff, and not for the protection of the co-surety, and neither Royce nor Johnson can defend in this suit upon that ground. It would be unjust, gentlemen, to say that a party can defend a bond given under such circumstances; and for that purpose I charge you that the circumstance that Burns was not a freeholder cuts no figure in this case, and you will not consider it."

—And that, when he did submit the question of notice to the jury, he did so "in a mild form."

We cannot concern ourselves with the *manner* of the court

in instructing the jury, only so far as we can measure it by the language employed. He may have peculiar methods of emphasis, which may before a jury have a prejudicial effect; but this we cannot reach. If the words used are not prejudicial or misleading, but contain a true statement of the law as applied to the facts in the case, we must be content.

A careful examination of the whole charge fails to convince us that any portion of it is open to criticism. The law was correctly stated in regard to the fact of Burns not being a freeholder; and in the instruction that when "Johnson signed the bond, and Mr. Royce then signed the bond, and gave it to Johnson to have it perfected, in doing so Mr. Royce made Johnson his agent to see that it was properly executed, and therefore the acts of Johnson, in getting this bond signed and delivered, are the acts of Royce himself,"— the circuit judge was in harmony with the previous ruling of this Court in a similar case. *Brown v. Probate Judge,* 42 Mich. 504, 505.

We do not think the jury were either prejudiced or misled by the charge of the court.

Upon the trial of the case the counsel for defendant offered the bond in the Hessell and Mayotte case, upon which the name of Stack had been erased and the name of Burns written thereafter, for the purpose of showing that the names of Stack and Royce were entered upon this bond at the time both bonds were signed. This was objected to, and the bond excluded. Royce, however, was allowed to testify, without objection, that he signed the two bonds together, and that he took up the Hessell bond first, and saw John K. Stack's name therein, and supposed it was in the other.

This exclusion of the Hessell and Mayotte bond is claimed to be error. It is now insisted that the introduction of said bond, with the names of Stack and Royce written as sureties in the body of the same, would have had a tendency towards showing that Northrup, who drew the bonds, had knowledge

of the condition made by Royce that Stack should also sign as surety.

No such claim for the proposed evidence seems to have been made upon the trial, and we do not think it would have had any such tendency.

It appears, without dispute, from the evidence, that Northrup was never informed that Royce attached any condition to his signature; Johnson himself testifying that he never told Northrup that Royce attached any such condition to the bond. Although, perhaps, this bond might have been admissible as part of the *res gestœ*, being executed at the same time with the one in suit, and connected therewith more or less, yet what was written in the bond, and why it was so written, clearly appeared in the testimony of Royce, Johnson, and Northrup; and, if any error was committed in rejecting it, no harm could possibly have been done thereby, and the error was therefore without prejudice.

The judgment is affirmed, with costs.

The other Justices concurred.