TAYLOR COUNTY V. KING ET AL.

73 153
105 553

1. **Sureties:** OFFICIAL BOND: CONDITION THAT OTHERS WOULD SIGN: NOTICE: LIABILITY. The sureties on the bond of a county treasurer signed the same upon condition that other signatures should be obtained, and that the persons signing the bond should qualify as the owners of property amounting in the aggregate to $65,000. The sureties, after signing the bond, left it with J. and D., with the understanding between them and J. and D. that it was to be delivered only after the above-named conditions had been performed. The principal, however, procured the bond from J. and D. in violation of the understanding, and presented it to the board of supervisors without said conditions being performed, who accepted and approved it without any knowledge of said conditions, and without any knowledge that it had ever been deposited with J. and D. for any purpose. It may be conceded, however, that there was enough on the face of the transaction to lead the board to the inference that the sureties expected that the aggregate amount of property to the ownership of which the sureties would qualify would be larger than it was, or that the bond would not be accepted. *Held* that the sureties could not escape liability on the ground that the bond was delivered by J. and D. in violation of the conditions, since J. and D. were their agents, and not those of the county; nor on the ground that the board had notice of the fact that they had signed upon conditions which had not been complied with. (See opinion for authorities cited.)

*Appeal from Adams District Court.*

WEDNESDAY, OCTOBER 26.

THIS action was brought to recover against the defendant P. C. King for alleged default made by him as treasurer of the plaintiff county. The other persons joined with him as defendants were sureties upon his official bond. The action is brought upon such bond. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant sureties appeal.

*G. B. Haddock, J. L. Brown* and *Charles Thomas,* for appellants.

*L. Evans, W. W. Morsman* and *J. F. Flick,* for appellee.

ADAMS, CH. J.—The appellant sureties claim that the bond has no validity as to them, because, as they allege, the

bond was signed with conditions, and not to be delivered until the conditions should be performed; the conditions being that the signatures of other persons should be obtained, and that the persons signing the bond should qualify as the owners of property amounting in the aggregate to $65,000, which was not done. It appears, we think, from the evidence, that the appellant sureties, after signing the bond, left it with one Johnson and one Dunlavey; that the understanding between them and Johnson and Dunlavey was that it was to be delivered only after the conditions above mentioned had been performed; that the principal in the bond, however, procured the bond from them in violation of the understanding, and presented it to the board of supervisors, who approved it; that they did so, however, without knowledge of the conditions, and without knowledge that the same had ever been deposited with Johnson and Dunlavey for any purpose.

It is conceded by the appellants that, if they had delivered the bond to the principal with the same understanding, his delivery would be a good delivery, and the appellants would be precluded from setting up the fact that the bond was signed with conditions, unless they could show that the supervisors had knowledge of the conditions, or were put upon inquiry in respect to them. The law, indeed, is well settled, at least in this state, that in such case the sureties would be deemed to have clothed the principal with apparent power to deliver the bond. (*Carroll County v. Ruggles*, 69 Iowa, 275.) But it is said that the case is different where the sureties took the precaution to put the bond into the hands of a third person. To this, however, we have to say that it appears to us that Johnson and Dunlavey were the agents solely of the sureties, and, if the bond was delivered in violation of the conditions upon which the sureties signed it, it was the fault of their own agents. The sureties selected untrustworthy persons, and the loss should not fall upon the county, who had had nothing to do with these persons.

If the supervisors had received the bond from Johnson and Dunlavey, it may be that they would have been charged with the duty of discovering what their powers were. But they received the bond from the very person who might be expected to deliver it, and who had the apparent power to deliver it. If we should sustain the appellants in their defense, no such bond could be safely accepted by a board of supervisors, though presented by the principal, until they had brought all the sureties before them, and ascertained from them upon what conditions, if any, they had signed the bond, and, if upon any, whether they had been performed.

In *Carroll County v. Ruggles*, above cited, this court said that the board of supervisors should not be required to compel the attendance of the sureties to official bonds to ascertain whether their names were affixed with conditions; that they do not, indeed, have the power to compel their attendance; and that, the time and place being fixed by law for the approval of such bonds, the board ought not to be expected to travel over the county to seek out and interview the sureties upon the subject of their obligations.

The appellants rely upon *Daniels v. Gower*, 54 Iowa, 319. That was an action upon a non-negotiable promissory note, which had been deposited by the surety with a third person, and which afterwards was obtained by the principal, and delivered by him in contravention of the terms imposed by the surety. It was held that the surety was not bound. But this court, as is seen in *Carroll County v. Ruggles*, does not regard the ruling in *Daniels v. Gower* as applicable to a case like the present, arising upon an official bond whose acceptance and approval involve the discharge of an official duty at a fixed time and place. Besides, it is proper to say that the ruling in *Daniels v. Gower* was based in part upon the supposed authority of *Pepper v. State*, 22 Ind., 399. But the latter case, was not, in fact, an authority, because it had been overruled in *State v. Pepper*, 31 Ind., 76, (87), which fact was not brought to the attention of this

court.   While the ruling in *Daniels v. Gower* is not without support, its correctness, in view of all the decisions bearing on the question, and of the principle involved, may be doubted.

In this connection, we ought to notice another case especially relied upon by the appellants, and that is *Smith v. South Royalton Bank*, 32 Vt., 341.   In that case a bond and mortgage had been deposited with one Rolfe, to be delivered when certain conditions were performed.   A delivery having been made without the performance of the conditions, it was held that the delivery was not valid.   But the court in that case regarded the deposit with Rolfe of such a character that the instruments became escrows.   Besides, it appears that when the instruments were delivered it was known that they came from Rolfe's hands, who was a special agent; and it was held that, that fact being understood by the parties, the party to whom the delivery was made should have inquired in regard to the extent of his powers.

The bond sued on is not, in our opinion, to be deemed an escrow, in the proper sense of the word.   It was deposited with a third person by the obligors alone, and not by any agreement between them and the obligee.   Nor did the plaintiff have any knowledge of the special agents, Johnson and Dunlavey, and there was nothing, so far as we can see, to put the board upon inquiry in respect to the obligation of the sureties.   The correct rule seems to be expressed in *State v. Peck*, 53 Me., 284.   The court said:  "A bond perfect upon its face, apparently duly executed by all whose names appear therein, purporting to be signed, sealed and delivered by the several obligors, and actually delivered by the principal without stipulation, reservation or condition, cannot be avoided by the sureties upon the ground that they signed it upon the condition that it should not be delivered unless it should be executed by other persons who did not execute it, when it appears that the obligee had no notice of such condition, and nothing to put him upon inquiry as to

the manner of its execution, and also that he has been induced upon the faith of such bond to act to his own prejudice." See, also, in this connection, *Dair v. United States*, 16 Wall, 1; *Deardorff v. Foresman*, 24 Ind., 481; *Nash v. Fugate*, 24 Grat., 202, (208); *Chicago v. Gage*, 95 Ill., 593.

One position of the appellants remains to be noticed. They claim that there was enough upon the face of the bond in suit to put the supervisors upon inquiry. The fact appears to be that the bond did not comply with the law, in that it did not appear that the sureties had qualified to the ownership of sufficient property. It may be added that some of the affidavits for the qualification of sureties had been partially prepared, but not executed. It is said that the board should have seen that the bond was not as the appellants expected it would be when it should be delivered. The bond, however, was not invalid by reason of its non-compliance with the law. (Code, § 688.) It may be that there was enough upon the face of the transaction to lead the board to the inference that the sureties expected that the aggregate amount of property to the ownership of which the sureties would qualify would be larger than it was, or that the bond would not be accepted. But there was nothing in this, we think, to lead to the inference that they had *agreed* that the bond should not be delivered until others had signed it, and the ownership of more property had been qualified to. Indeed, the stronger the expectation which the sureties might have entertained that the bond would not be accepted as it was, the less necessity would there seem to them to be for an agreement in respect to its delivery. Unless the board had reason to infer something more than a mere expectation on the part of the sureties, it was not, we think, put upon inquiry.

In our opinion, the judgment must be

AFFIRMED.