## JOYCE v. COCKRILL.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

### No. 613.

1. SURETY ON NOTE—RELEASE—BREACH OF CONDITION.

Where, on sale of property by receiver, a surety indorses a note given for the purchase price, on condition that the receiver should take other security, and such condition is not known to the receiver, but the note is delivered to the payee, to be given to the receiver, a breach of such condition does not relieve the surety.

2. SAME—NOTICE TO PAYEE.

On sale of assets of an insolvent by a receiver, the decree directed the receiver to require personal security on the deferred payments, and reserve a lien in his deed of the real estate included in the sale. A surety on the purchase note understood from his principal that such lien would be reserved, but on delivery of the note to the receiver he either remained silent as to such condition or intrusted the note for delivery to the principal. *Held*, that the failure of the receiver to reserve a lien in his deed of conveyance did not release the surety.

3. SAME—NEGLIGENCE OF PAYEE.

Failure of the receiver to perform his official duty will not relieve the surety, as such duty was owing, not to the surety, but to the creditors of the insolvent, for whose benefit a sale was made.

4. SAME.

A sale of assets of an insolvent included notes which never came into the hands of the purchaser. The purchaser gave his note for the price, with defendant as surety. In an action on the note, the surety alleged that he became surety only on the understanding that all the assets should be delivered to his principal, and that the failure to obtain such notes constituted a failure of consideration, releasing him. *Held*, that the answer was insufficient to discharge the surety, because it did not appear that the receiver, who was the payee of the note, accepted the note, and delivered the assets for which it was in part executed, with notice of any condition.

5. ACTION ON NOTE—FAILURE OF CONSIDERATION.

A note, with defendant as surety, was executed for a lumping sale of the entire assets of an insolvent. In an action thereon, the answer of the surety alleged that certain promissory notes, which were sold, were never delivered to his principal, and also alleged that repeated demands for said notes had never been complied with. No objection was taken in the court in which the sale was made by reason of the refusal to deliver the notes, and no effort made to rescind the contract. No good reason was shown why the principal could not acquire title through appropriate legal proceedings. The answer alleged that plaintiff took the notes with knowledge of the facts set up in the answer. *Held* insufficient to show failure of consideration.

6. LIABILITY OF SURETY—SET-OFF AND COUNTERCLAIM.

On a sale of assets of an insolvent, two notes were given for the purchase price. Defendant was a surety on one of the notes, and a third person a surety on the other. The sale was a lumping sale, and the two notes were not given for any particular portion of the assets. Certain of the property sold was never delivered. But other facts appearing in the answer showed that the purchasers obtained a good title thereto, and that the present holder of the note in suit wrongfully withholds said notes from the purchasers, and is, therefore, liable to the purchasers for them or their value. Upon these facts it is held that this right of action is one which belongs solely to the purchasers or principals in the note now in suit, and is not a right of action available to the surety of such purchasers by way of either set-off or counterclaim, not being a mutual claim and the subject of set-off under the Ohio statute. There being outstanding and unpaid two notes, made by the purchasers, upon which different persons are bound as sureties, this affords an additional reason why one surety should not appropriate to himself a right of action against the payer, belonging to the maker of the note, at the expense of the surety upon the other note, still unpaid, and having an equal equity to such relief.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Thomas E. Powell, for plaintiff in error.

T. P. Linn, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. This is an action upon a promissory note, made by James E. Joyce & Co., with the plaintiff in error, John Joyce, as surety. The note is one of several made for the purchase price of the assets of an insolvent trading corporation, sold under order and directions of a chancery court at Little Rock, Ark. All the notes were payable to a receiver appointed by said court, and the note in suit was assigned to the First National Bank of Little Rock, which sues through the defendant in error, its duly-appointed receiver. The suit was by petition according to the Ohio code practice, and was against John Joyce only. Joyce, by answer, presented two defenses. There was a general demurrer going to both defenses, which the court sustained. The defendant below refused to further plead, whereupon the court rendered judgment for the amount of the note, interest, and costs.

The action of the court in sustaining the demurrer to the answer has been assigned as error. The property sold by the receiver consisted of a stock of goods and merchandise, real estate, and choses in action. It was sold in bulk for the gross price of $38,200. The note

in suit is for $9,000, is dated March 20, 1893, and is payable three years after date. The decree of sale directed the receiver to require personal security upon the deferred payments, and to reserve a lien in his deed of conveyance of the real estate included in the sale. The first defense of the answer is that the said John Joyce became the surety of James E. Joyce & Co. upon the agreement and understanding that the lien directed by the court would be reserved. It is then averred that the receiver, negligently and in violation of said order of the court, conveyed said real estate without reserving any lien in his deed, and that said James E. Joyce & Co. have since sold and conveyed said property to third persons, who were ignorant of said order of court made for said sale, "whereby the lien which ought to have been retained and reserved has been lost." It is further averred that the value of the real estate so sold was sufficient to pay the unpaid purchase money, consisting, as alleged, of the note in suit and of another, of like amount, outstanding, upon which one Fitzgerald is sole security. These facts are pleaded in discharge and relief of plaintiff in error as surety upon the note in suit. While it is stated in the answer that the agreement and understanding between the plaintiff in error and the principal debtors was that the receiver should retain or reserve a lien, as provided by the statute law of Arkansas, in his deed conveying to said James E. Joyce & Co. the real estate, which was part of the consideration for which this note was executed, and that the Little Rock Bank, to whom the note was subsequently assigned, took the note with knowledge of the facts stated in the petition, yet it is not averred that the receiver, who was to reserve the lien, was informed, when he accepted the note or before he conveyed the land, that any such conditions were attached by the surety to his liability. It is not stated whether the note was delivered to the receiver by the surety, or by the purchasers of the property; but, whether by the one or the other, plaintiff in error chose to remain silent as to any conditions, or intrusted the note for delivery to the purchasers, and is equally bound by the silence of the latter. A surety is not discharged, even against the payee, by evidence that the obligation upon which he is sued was delivered to the principal obligor upon conditions which have not been performed, if the payee accepted the instrument without notice, and would sustain loss if deprived of the security upon which he relied. This principle has been applied to official bonds, as well as to promissory notes and other negotiable paper. Thus, in Dair v. U. S., 16 Wall. 1, a distiller's bond, perfect upon its face, was signed by a surety, and delivered to one of the principal obligees, upon condition that it should not be delivered unless it was executed by other persons, who did not execute it. The obligee had no notice of this condition, and accepted it. It was held these facts constituted no defense by the surety, who had thus signed the bond upon a condition which had not been performed. To the same effect are the cases of Amis v. Marks, 3 Lea, 568, Buford v. Cox, Id. 518, State v. Potter, 63 Mo. 212, and State v. Peck, 53 Me. 284. Neither will a surety upon a promissory note, or a private bond, in the hands of the payee, be discharged upon evidence that he had signed the note or bond upon conditions not performed, but of which the payee had

no notice.   Jordan v. Jordan, 10 Lea, 124;   Russell v. Freer, 56 N. Y. 67;   McCormick v. Bay City, 23 Mich. 457;   Davis v. Gray, 61 Tex. 506;   Merriam v. Rockwood, 47 N. H. 81.

But it is insisted that by the neglect of the receiver a lien has not been reserved, which would, through subrogation, have inured to the benefit of the surety.   Undoubtedly the general principle is that, if a creditor does any act inconsistent with the rights of the surety and injurious to him, or omits to do any act which his duty to the surety obliges him to do, and thereby injures the surety, the latter will be discharged to the extent of such injury.   Story, Eq. Jur. §§ 325, 693. So a surety is entitled to the benefit of all securities which the creditor obtains from the principal debtor, and if the creditor by any affirmative act surrender them to the debtor, or they are lost through the neglect of some duty owing to the surety, the latter will be exonerated to the extent of the loss thus sustained.   Evans v. Kister (decided at this term) 92 Fed. 828.   The facts of this case do not bring it within the principles relied upon.   The receiver surrendered no lien.   He never had a lien.   He might have acquired one by an express reservation in his deed to the purchasers, but in no other way.   The case would be very different if he had released such a lien after it had arisen.   But the complaint is that he might have acquired a lien, and chose not to do so, and to rely alone upon the purchaser and his surety.   It may be admitted that he failed in his duty by not reserving a lien as directed by the decree.   But to whom was this duty due? To the court, and to the parties interested in the proceeds of sale. It was a duty imposed upon him by the court for the protection of the owners of the property and the creditors interested in its sale.   Admit that he failed in the discharge of this official duty; can this surety obtain any benefit therefrom?   If so, it will be at the expense of the creditors, who, having lost one security through the negligence of the receiver, will be deprived of the benefit of another which he did take. Yet the negligence of the creditors thus to be punished does not equal that of the surety who seeks to make it available for his own release.   If those interested in the proceeds of the sale should have seen to it that the receiver did not neglect to take this lien, quite as much may be said as to the surety.   He either delivered the note himself, or suffered his principals to deliver it, to the receiver, without notice that his liability was to depend upon the reservation of this lien.   It is incredible that the receiver would have accepted the note subject to such conditions, or, if he did, that he would have conveyed the property without reserving a lien.

Upon the averments of the answer, the assignee of this note stood upon no higher footing than the receiver would, if he, in his official character, were plaintiff.   Still, the negligence of the surety in failing to give notice to the receiver of the conditions upon which he was to become liable, and in failing to see that the receiver's deed reserved the lien directed by the court, is greater than that of the owners of the property or the creditors interested in the proceeds of sale.   But this loss or injury has come about through the neglect of a public official to execute properly a duty imposed by the decree under which

he was acting. That duty was imposed, not for the benefit of the sureties, who might strengthen the notes of the purchaser, but for the benefit of the parties to the cause. He was, therefore, under no active or affirmative duty to the surety. He had no notice of the conditions upon which the surety had signed, nor of his reliance upon the lien of a vendor for his protection. The performance of this official duty might have prevented loss to this surety. But mere laches or negligence, or nonperformance of some act which might have benefited a surety, will not, in the absence of some express covenant or condition, discharge a surety. The neglect must be of some duty owing to the surety. In the case of Board v. Otis, 62 N. Y. 88–92, the sureties upon the official bond of a county treasurer sought to be discharged from liability upon their obligation because of the neglect of other county officials, whose duty it was to make stated examinations of the accounts of the treasurer. The court held that this duty was one owing to the public, and not to the sureties. In that case the court stated the rule, as between sureties and obligees, in a way which meets our approval:

"Mere passive negligence," said the court, "or laches of an obligee or creditor, mere nonperformance of some affirmative act which if performed might prevent loss to the surety, will not, in the absence of some express covenant or condition to that effect, discharge a surety, and that the neglect of duty which is available as a defense for a surety must be of some duty owing to the surety, and not to others,—some positive duty undertaken in behalf of and for the benefit of the surety."

To the same effect is the case of Wornell v. Williams, 19 Tex. 180, where the sureties upon the note of a purchaser at an administrator's sale sought to be released from liability upon the ground that the Texas statute and the order of the court required that a mortgage should be taken at such sales upon property sold, and that they would not have become sureties except in reliance upon this statute and order, and that the neglect of the administrator to take the security required by statute and order of the court should operate to relieve them. The Texas court held that upon these facts the sureties were not released.

In Dye v. Dye, 21 Ohio St. 93, the general principle is thus stated:

"A creditor may, however, in many ways do that which, though it may not affect the liability of the principal, will exonerate sureties. In all such cases the discharge of the surety is based on some recognized and well-defined principle, and, in general, results from a positive act of the creditor which operates to the prejudice of the surety. Passiveness on the part of the creditor will not discharge the surety, unless he omits to do, when required by the surety, what the law or his duty enjoins him to do, or unless he neglects, to the injury of the surety, to discharge his duty in any matter in which he occupies the position of a trustee for the surety. The discharge of the surety is not claimed in this case by reason of any positive act of the creditor, nor by reason of his neglect to prosecute the claim, after being required by the surety to do so by notice in writing, in accordance with the statute, nor, indeed, by reason of his neglect to comply with any requirement of the surety whatever; for, from aught that appears, the passiveness of the surety equaled that of the creditor. Nor did the creditor have anything in his hands, actually or constructively, in the nature of a trust. Then, upon the principles already so broadly stated, it would seem that the surety was not exonerated from liability on the note."

To the same general effect are the cases of Schroeppell v. Shaw, 3 N. Y. 446; Humphrey v. Hitt, 6 Grat. 509; Sawyer v. Bradford, 6 Ala. 572; Mundorff v. Singer, 5 Watts, 172.

The learned counsel for plaintiff in error have cited and relied upon a number of cases, including the cases of Burr v. Boyer, 2 Neb. 265, and Wulff v. Jay, L. R. 7 Q. B. 761. Most of them are distinguishable from the case in hand, but, in so far as they are in conflict with the cases cited and relied upon, it is enough to say that they do not meet with our approval, and are not in accord with the great weight of authority. The cases of Burr v. Boyer, supra, and Wulff v. Jay, supra, were cases in which an actual existing security was lost by the neglect of the creditor to register the instrument. Without stopping to consider these cases, it is enough to say that they are distinguishable from the one at bar by the fact that no existing lien has been sacrificed, and that the only fault of the creditor here complained of is that he did not reserve a lien when he might and should have done so in obedience to the order of the court.

There remains the defense of failure of consideration. This defense rests upon the averment that, among the assets of the McCarthy-Joyce Company, sold to James E. Joyce & Co., were certain promissory notes, then in possession of the defendant in error as receiver for the First National Bank of Little Rock, and that said receiver, though often requested, has refused to surrender same to said James E. Joyce & Co. The consideration which is sufficient to support the principal's contract is the consideration upon which that of the surety rests. It follows, therefore, that if the consideration upon which this note was executed by the principal makers was sufficient, there is no failure of consideration which can be available to the surety, unless his own engagement was entered upon under some other and independent agreement. This the answer attempts to show by the statement that the defendant became surety "only upon the understanding and faith" that all of the assets of the McCarthy-Joyce Company sold to his principals, James E. Joyce & Co., including the notes then in the possession of the bank or its receiver, would be delivered to said purchasers; and the failure to obtain said notes is relied upon as constituting a failure of consideration. This, if true, would constitute only a conditional obligation, and failure to comply with the condition would discharge the surety, without regard to its effect upon the obligation of his principals. It is manifest, however, that the averments of the answer are insufficient to discharge the surety; for it is not averred that either the court or its receiver, the payee of the note, accepted the note and delivered the assets for which it was in part executed with notice of any condition. The authorities for this conclusion have been already cited in disposing of the first defense.

Undoubtedly, a surety may, when the contract has not been assigned to a purchaser for value without notice, when called upon to perform, show either a total or partial failure of the consideration of his principal's contract. But such a defense, when made by the surety, must be one which would be available to the principal, if sued. Here, again, the averments of the answer are insufficient. This note in suit was not executed for any specific part of the property purchased

by James E. Joyce & Co., but was made in part consideration for a lumping sale of the entire assets of the McCarthy-Joyce Company, consisting of lands, a stock of merchandise, and a mass of choses in action. The averment is that among these choses in action were certain promissory notes, aggregating about $11,000, payable to that company, which had been placed by the payee in possession of the Little Rock Bank for collection, and which were so in possession of that bank, or its receiver, both when that company made its general assignment and when its assets were sold to James E. Joyce & Co. The ground upon which the bank's receiver, the defendant in error, refused to surrender these notes, is not stated, though, as it is stated that the bank was a large creditor of the said McCarthy-Joyce Company, it is most probable that it asserted a banker's lien thereon to secure its general account as a creditor. But if we assume, as probably we should, in view of the averments of the answer, that the defendant in error would be estopped to assert such a lien, the bank having been a party to the suit in which it is averred a decree was rendered directing the sale, we are driven to the inevitable conclusion that James E. Joyce & Co. obtained the superior title to said notes, subject to no incumbrance in the nature of a banker's lien. The purchasers obtained, upon this hypothesis, just what the surety asserts they bought. That the purchaser knew that the notes in question were not actually in the custody of the court or its receiver when this sale occurred sufficiently appears, for the claim to these notes is rested upon the averment that the receiver had scheduled them as assets "in possession of the bank for collection." So it is stated that, after the sale had been reported and confirmed, and the terms of sale complied with by the purchasers, an order was made directing the court's receiver to deliver to the purchasers the property so sold, including said notes so at the time in possession of the defendant in error. It further appears that all of the property so sold was delivered to said purchasers, and proper conveyance made, except these notes. It is then stated that the said purchasers had made repeated demands upon the said bank and its receiver, the defendant in error, for said notes or their proceeds, but that such demand had been refused, and that the defendant in error continues to withhold said notes or their proceeds. No objection was taken in the court in which the sale was made by reason of this refusal of one of the parties to the cause to deliver these notes to the purchaser. No effort was then made to rescind the contract, or to obtain any abatement of price, or to obtain an order of that court upon the defendant in error for these notes. Upon the contrary, the case as made by the answer establishes that the purchaser bought, along with the other assets, certain notes at the time in possession of the defendant in error, and by the decree obtained the title and right to same, or their proceeds. They have not yet secured same, though, on the facts stated, no good reason is shown why they may not assert their title through appropriate legal proceedings. Upon this view of the case, there can be no pretense that the consideration of the principal's contract has failed in whole or part. Subsequently the note in suit seems to have been assigned to the bank's receiver by Wittemore, the court's receiver. Inferably,

this was done in course of the distribution of the assets among the creditors.

It is averred that the defendant in error took the note with knowledge of the facts stated in the defendant's answer. We have there-fore assumed that the note is subject to all defenses which could be made against the original payee. As the defense of failure of consideration would not be available to the principals in the note, in a suit against them by the payee, it is a defense not available to their surety. It may be that, upon the facts stated in this answer, there exists against the defendant in error a liability to account to the principals of the plaintiff in error for the notes in question, or their proceeds. But such liability constitutes an independent right of action to recover the notes themselves, or for damages for their deten-tion or conversion. But that is a right of action which belongs to the principals, and cannot be claimed or asserted by their surety. It is certainly not a right of set-off belonging to the surety, for only mutual claims are the subject of set-off. That it might be asserted as a counterclaim by the principals, if sued, may be conceded. Even then they would be under no obligation to set it up by way of re-coupment or counterclaim; for, if the facts do not constitute a fail-ure of consideration, they might reserve their claim, and bring a separate action. Under section 5072 of the Ohio Revised Statutes, the counterclaim which a defendant may set forth in his answer "must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition." Manifestly, this is not a right of action in favor of the surety upon which "a several judgment might be had."

But, upon general principles, this liability of the defendant in error to account for the notes in question cannot be relied upon as either a set-off or counterclaim—First, because, if it be set up and allowed here, it must bar any future action by the principal makers of the note; and, second, the answer shows another note of like amount outstanding upon which a different person is liable as surety. One surety has no more right to appropriate this counterclaim for his own benefit than the other. If each should be sued, and make the same defense, how would their conflicting claims to control and appropriate this counterclaim be reconciled? In Gillespie v. Tor-rance, 25 N. Y. 306, the suit was, as here, against the surety upon a note, and the defense was a failure of consideration. The note was given for the price of timber sold to the principal maker of the note. The timber was in a raft, and the quantity and quality was estimated upon certificates of a surveyor. The defense was that there was a gross mistake as to quantity, and a breach of warranty in that respect, as well as in quality. The court held that the de-fense of failure of consideration was not made out, and that the surety could not avail himself of the breach of warranty as to quan-tity or quality. The court said that, though there seemed "a strong equity in favor of the defendant to have the note canceled or re-duced, by applying towards its satisfaction the damages which appear to be due to Van Pelt for the breach of warranty," it was an equity

in which Van Pelt was interested to even a greater extent than the defendant, and could not be disposed of without having him before the court. In Lasher v. Williamson, 55 N. Y. 619, the action was against the sureties of a lessee, who sought to defend by showing that the plaintiff, as part of the contract between himself and their principal lessee, had agreed "to furnish to him during the period of the lease a certain quantity of property, to be stored upon the leased premises at an agreed price," and that he breached this agreement. The court said:

"The breach of that promise gave [the lessee] a cause of action against the plaintiff, but this cause of action in favor of Gibbs [the lessee and principal maker of the bond] cannot be available to the sureties. It belongs to Gibbs and not to them. * * * The nonperformance or partial performance of Lasher's engagement to Gibbs is not to be regarded as a failure of consideration, but as an independent cause of action, which Gibbs, and he only, may assert. It is in his election to determine whether it shall be used defensively, or whether he will bring his own action for the damages, or whether he will forego his claim altogether. The defendants have no control over him in this respect, and cannot borrow and avail themselves of his rights."

It is proper to observe that neither set-off nor counterclaim were set forth as distinct defenses in the answer. Without admitting that either defense could be made under the defense of failure of consideration, we have preferred to treat the defenses as if properly pleaded. There was no error in sustaining the demurrer to the answer, and the judgment will be affirmed.