TITLE GUARANTY & SURETY CO. v. SCHMIDT et al.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1914.)

No. 3799.

1. PRINCIPAL AND SURETY (§ 27*)—DISCHARGE OF SURETY—DELIVERY IN VIOLATION OF CONDITIONS—NOTICE TO OBLIGEE.

A surety on a bond in the hands of the obligee is not discharged by evidence that the bond was delivered by him to the principal obligor upon conditions which were not performed, but of which the obligee had no notice.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 56; Dec. Dig. § 27.*]

2. PRINCIPAL AND SURETY (§ 159*)—ACTION—BURDEN OF PROOF—DEFENSES.

Defendants signed a bond in favor of plaintiff surety company as obligee to indemnify it against loss by reason of its becoming surety on the bond of a firm of contractors. The bond was on a printed form which did not contemplate its signature by the contractors. It was delivered by them to plaintiff, was fair and regular, and did not disclose on its face that it was signed subject to any conditions. Held, that to constitute a defense on the ground that it was delivered in violation of the agreement of the contractors that before delivery the firm would sign it as principal, and would also procure the signature of 10 responsible persons as sureties, the burden rested on defendants to prove, not only such facts, but also that plaintiff had notice of the conditions when it accepted the bond, and that the fact that it was not signed by the contracting firm was not constructive notice to plaintiff of any conditions or irregularity, nor was the fact that one of the defendants failed to sign the property statement attached.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. § 159.*]

In Error to the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action at law by the Title Guaranty & Surety Company against William F. Schmidt and others. Judgment for defendants, and plaintiff brings error. Reversed.

Alfred G. Ellick, of Omaha, Neb. (H. C. Brome and Clinton Brome, both of Omaha, Neb., and George S. Wright, of Council Bluffs, Iowa, on the brief), for plaintiff in error.

Emmet Tinley, of Council Bluffs, Iowa (W. E. Mitchell, of Avoca, Iowa, and A. L. Preston and H. L. Robertson, both of Council Bluffs, Iowa, on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RINER, District Judge. This was an action brought by the plaintiff in error in the District Court of the United States for the Southern District of Iowa, Western Division, against the defendants in error, to recover upon an indemnity bond. The record discloses the following state of facts:

Marxen & Rokahr, a copartnership, were general contractors having their principal place of business at Avoca, Iowa; that on the 16th of May, 1905, they entered into a contract with Seward county, Neb., to furnish all material and construct a courthouse building for that county. By the terms of their contract the contractors were required to furnish a bond in the sum of $30,000, conditioned, among other things, for the payment of all material used in the construction of the courthouse building. Pursuant to this requirement of the contract, on the 19th of May, 1905, an application was made to the local agent of the plaintiff in error at Omaha, Neb., to furnish a bond. This application was accepted on condition that Marxen & Rokahr deliver to the plaintiff in error an indemnifying bond in the sum of $10,000, with at least two satisfactory sureties, conditioned to save the plaintiff in error and its successors and assigns harmless against all suits, actions, debts, damages, and loss whatsoever by reason of its contract of suretyship upon its bond given to Seward county to secure the performance by Marxen & Rokahr of their contract for the construction of the courthouse. Marxen, for and on behalf of his firm, agreed to procure an indemnifying bond, and returned to his home at Avoca, Iowa, for that purpose. Pursuant to the agreement between Marxen and the local agent of plaintiff in error at Omaha, the local agent executed and delivered a bond in the sum of $30,000 from the plaintiff in error to Seward county, which was filed in the office of the county clerk of that county. Marxen, having procured the signatures of the defendants in error to the indemnity bond, delivered it to the local agent of the plaintiff in error at Omaha.

During the progress of the work of constructing the courthouse the contractors purchased material from the Des Moines Bridge & Iron Works of the value of $17,609.30, of which they paid the sum of $6,610.80, leaving a balance of $10,998.50 due and unpaid upon the purchase price of the material.

On the 7th of January, 1908, the Des Moines Bridge & Iron Works Company brought an action in the District Court of Seward County, Neb., against the contractors and the plaintiff in error upon the bond given to the county to recover this balance due upon the purchase price of the material furnished by it to the contractors and used in the construction of the courthouse. A trial was had, resulting in a judgment in favor of the Des Moines Bridge & Iron Works Company for $12,134.15, with interest and costs. The contractors being at that time insolvent and unable to pay or appeal from the judgment, the plaintiff in error appealed the case to the Supreme Court of the state of Nebraska, where the judgment was affirmed and the plaintiff in error was compelled to pay the amount of the judgment, with interest and costs, in the sum of $13,886.10. The defendants in error were notified of these proceedings, and also that they would be held liable on their indemnity bond for any loss that the plaintiff in error might

sustain, and pursuant to this notice employed counsel to assist in the defense of the suit brought by the Des Moines Bridge & Iron Works Company.

On the 15th of March, 1911, this action was brought by plaintiff in error to recover upon the indemnity bond.

The defendants in error in their answer set up two defenses: First. That the indemnity bond was executed and delivered without consideration. This defense, however, was abandoned at the trial. The second defense alleged that Marxen at the time he procured the defendants in error to execute the indemnity bond represented to each of them that Marxen and Rokahr would sign the bond, and that he would procure 10 responsible sureties; that he would leave the bond with the cashier of the Avoca State Bank and would not deliver it as an executed agreement until it had been signed by 10 persons and his firm. It is further alleged that the plaintiff in error and Dodson, its local agent at Omaha, had notice of the conditions upon which the signatures of the defendants in error were obtained.

At the trial the defendants in error offered evidence tending to show that Marxen obtained their signatures to the indemnity bond upon the representation that his firm would sign the bond and that he would procure 10 responsible persons to sign before it was delivered; but there is no evidence in the record tending to show that the plaintiff in error or its local agent, who received the bond from Marxen, had any notice or knowledge that the defendants in error had executed the bond upon any condition whatever. The indemnity bond, a copy of which is set out in the record, the original having been presented to the court for inspection at the oral argument, upon its face was a perfect instrument, having no blanks or room for additional names, either in the body of the bond or in the spaces provided for signatures, and the local agent of the plaintiff in error testified that he received the bond in its present condition from Marxen on the 27th of May, 1905, pursuant to their agreement that such bond should be furnished. At the close of all of the evidence the plaintiff in error moved for a directed verdict in its favor, which motion was overruled, and the court on its own motion directed a verdict in favor of the defendants in error.

[1] The bond in suit being apparently perfect and complete upon its face, if the sureties have any defense it must be because the writing does not fully express their contract. They say that it does not express the contract they intended to make, but no conditions are attached to the bond. If they wanted to attach conditions to their obligation they should have stated them in writing, or at least given notice of them in some form to the obligee, the other party to the contract. In other words, the obligation, as expressed in writing must, we think, remain in full force in the absence of conditions known to the party for whose benefit the promise was made.

The case of Dair v. United States, 16 Wall. 1, 21 L. Ed. 491, was an action to recover on a distiller's bond. At the request of Jonathan Dair, one of the principals, James Dair and William Davidson signed the bond as sureties on condition that it was not to be delivered to the plaintiff until it should be signed by Joseph Cloud as cosurety. With

this understanding the bond was placed in the hands of the principal, Jonathan Dair, who subsequently, and without procuring the signature of Joseph Cloud as cosurety, delivered the bond to the plaintiff. The bond was in all respects regular upon its face and the plaintiff had no notice of the condition. Upon these facts the Circuit Court entered a judgment in favor of the United States, which was affirmed by the Supreme Court, and in the course of its opinion the court said:

"It must be conceded that courts of justice, if in their power to do so, should not allow a party who, by act or admission, has induced another with whom he was contracting to pursue a line of conduct injurious to his interests to deny the act or retract the admission in case of apprehended loss."

This principle has been applied in a number of cases: Empire State Surety Co. v. Carroll Co., 194 Fed. 593, 114 C. C. A. 435; Moses v. United States, 166 U. S. 571, 17 Sup. Ct. 682, 41 L. Ed. 1119; Joyce v. Auten, 179 U. S. 591, 21 Sup. Ct. 227, 45 L. Ed. 332; Smith v. Kirkland, 81 Ala. 345, 1 South. 276; Williams v. Morris, 99 Ark. 319, 138 S. W. 464; Tidball v. Halley, 48 Cal. 610; Byers v. Gilmore, 10 Colo. App. 79, 50 Pac. 370; Mathis v. Morgan, 72 Ga. 517, 53 Am. Rep. 847; Comstock v. Gage, 91 Ill. 328; Whitcomb v. Miller, 90 Ind. 384; Taylor Co. v. King, 73 Iowa, 153, 34 N. W. 774, 5 Am. St. Rep. 666; Benton Co. Bank v. Boddicker, 105 Iowa, 548, 75 N. W. 632, 45 L. R. A. 321, 67 Am. St. Rep. 310; Risse v. Hopkins, 55 Kan. 518, 40 Pac. 904; Whitaker v. Crutcher, 5 Bush (Ky.) 621; State v. Modrel, 69 Mo. 152; Ward v. Hackett, 30 Minn. 150, 14 N. W. 578, 44 Am. St. Rep. 187. The rule is thus stated in Joyce v. Cockrill, 92 Fed. 838, 35 C. C. A. 38:

"A surety is not discharged, even against the payee, by evidence that the obligation upon which he is sued was delivered to the principal obligor upon conditions which have not been performed, if the payee accepted the instrument without notice, and would sustain loss if deprived of the security upon which he relied."

It is also said in the same case:

"Neither will a surety upon a promissory note, or a private bond, in the hands of the payee, be discharged upon evidence that he had signed the note or bond upon conditions not performed, but of which the payee had no notice. Jordan v. Jordan, 10 Lea [Tenn.] 124 [43 Am. Rep. 294]; Russell v. Freer, 56 N. Y. 67; McCormick v. Bay City, 23 Mich. 457; Davis v. Gray, 61 Tex. 506; Merriam v. Rockwood, 47 N. H. 81."

[2] The trial court, as we gather from its opinion attached to the record, took the view that the sureties, having alleged knowledge on the part of the plaintiff in error, of the condition upon which the bond was executed, the burden of proof was upon the plaintiff in error to establish the fact that it had no notice or knowledge of the condition. We are unable to concur in this view. The bond, as already suggested, was fair and regular upon its face, and we think the burden was upon the sureties, not only to plead, but to prove by satisfactory evidence, the condition upon which the bond was signed, its delivery in violation of that condition, and that the plaintiff in error had notice of the condition at the time it accepted the bond. Whitcomb v. Miller, 90 Ind. 384; Bonner v. Nelson, 57 Ga. 433; Nash v. Fugate, 32 Grat. (Va.) 595, 34 Am. Rep. 780; University of Illinois v. Hayes,

114 Iowa, 690, 87 N. W. 664; Williams v. Morris, 99 Ark. 319, 138 S. W. 464. While it is quite true that all the sureties testified to the effect that at the time they signed the bond Marxen represented to them that his firm would sign the bond, and that he would procure the signature of 10 sureties and would deposit the bond with the State Bank of Avoca, and would not deliver it until it was so signed, yet only two of them, Nieman and Thies, seem to have attempted to make their signatures and the delivery of the bond expressly conditional upon compliance with the representations made by Marxen; and the fact that the bond was a printed form which did not contemplate the signatures of the principals, and only provided lines and spaces for the signatures of five indemnitors, may well raise a doubt as to whether the sureties, or at least some of them, signed the bond, making their signatures dependent upon the performance by Marxen of the conditions set out in their answer. However that may be, for the purpose of this case, we may assume that the sureties did sign the bond upon the conditions contended for by them, but still they would be liable for the reason that there is no evidence in the record showing or tending to show that the plaintiff in error, or any of its officers or agents, at the time the bond was delivered, or at any time prior to the time when the answer in this case was filed, had any knowledge or notice of any of the conversations between Marxen and the sureties, or that the bond was executed upon any conditions whatever. The only evidence in the record upon this point is found in the testimony of Dodson, the local agent of the plaintiff in error at Omaha, who accepted the bond from Marxen. He testified that he had no notice, knowledge, or information of any kind that the bond was other than it purported to be upon its face, or that it was signed by the sureties with any conditions attached to or connected therewith.

The trial court seemed to be of the opinion that because Marxen & Rokahr did not sign the bond as principals the bond itself was constructive notice to the obligee of the conditions upon which the sureties signed. This we think cannot be true for the reason that the plaintiff in error stood in no fiduciary relation to these sureties and owed them no duty to see that the bond was signed or executed as they intended it should be. They had the power to withhold their signatures until the principals had signed and to express in the bond itself the conditions upon which it was signed, if it was signed with conditions.

In Empire State Surety Co. v. Carroll County, 194 Fed. 593, 114 C. C. A. 435, which was a suit upon a county treasurer's bond, where the county treasurer as principal had failed to sign the bond, although his name appeared therein as principal, this court held that that fact would not relieve the sureties from liability. Judge Sanborn, speaking for the court, said:

"We adhere to the conclusion that, where the principal named in the bond would be liable in the absence of the bond for the acts or omissions which constitute the breach of its conditions in suit, the failure of the principal to sign the bond does not relieve the surety who has executed and caused, or permitted, it to be delivered to the obligee, from its liability for the breach of its condition. United States Fidelity & Guaranty Co. v. Haggart, 91 C. C. A. 289, 297, 163 Fed. 801, 809; St. Louis Brewing Ass'n v. Hayes, 38 C. C. A. 449, 97

Fed. 859; State v. Bowman, 10 Ohio, 445; City of Deering v. Moore, 86 Me. 181, 29 Atl. 988, 41 Am. St. Rep. 534; Pima County v. Snyder, 5 Ariz. 45, 44 Pac. 297; Douglas County v. Bardon, 79 Wis. 641, 48 N. W. 969; Gibbs v. Johnson, 63 Mich. 671, 30 N. W. 343; Trustees of Schools v. Scheik, 119 Ill. 579, 8 N. E. 189, 192 [59 Am. Rep. 830]; Woodman v. Calkings, 13 Mont. 363, 34 Pac. 187, 40 Am. St. Rep. 449; United States Fidelity & Guaranty Co. v. Union Trust & S. Co., 142 Ala. 532, 38 South. 177; Lovejoy v. Isbell, 70 Conn. 557, 40 Atl. 531; Johnson v. Johnson, 31 Ohio St. 131; San Roman v. Watson, 54 Tex. 254."

It was suggested by the court below in its opinion that because one of the sureties failed to sign the property statement attached to the bond that that was such an irregularity on the face of the bond as to constitute constructive notice. In this connection it need only be observed that the statement signed by the four sureties showed that they had property greatly in excess of the penalty of the bond, and in view of that fact we do not think that the failure of one of the sureties to sign the property statement was a sufficient defect to put the plaintiff in error upon inquiry as to the execution and delivery of the bond. Taylor County v. King, 73 Iowa, 153, 34 N. W. 774, 5 Am. St. Rep. 666.

The distinction sought to be drawn between actions on private bonds and actions upon official bonds and promissory notes is, we think, without merit. Joyce v. Cockrill, supra, and cases there cited.

For the foregoing reasons we think the motion of the plaintiff in error for a directed verdict in its favor should have been sustained.

The judgment is reversed and cause remanded, with instructions to grant a new trial.