(88 Misc. Rep. 57)

ROSENWASSER et al. v. AMUSEMENT ENTERPRISES, Inc., et al.

(Supreme Court, Appellate Term, First Department.   December 17, 1914.)

1. GUARANTY (§ 12*)—RENT—VALIDITY.
   That a guaranty for the payment of rent was signed the day before the lease was executed is immaterial, where the guaranty and lease were delivered simultaneously.
   [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 12; Dec. Dig. § 12.*]

2. LANDLORD AND TENANT (§ 28*)—ACTIONS FOR RENT—EVIDENCE—FRAUD.
   Where the lessor of a moving picture theater stated that prior lessees had made certain profits, proof that the defendant lessee operated the theater at a loss does not show the falsity of the representations, and is inadmissible for that purpose.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 82–84; Dec. Dig. § 28.*]

3. LANDLORD AND TENANT (§ 209*)—RENT—RELEASE.
   Where the landlord agreed to release a tenant from further payment of rent in case of sublease, provided rent was paid up to a given time, the agreement is executory, and the tenant cannot claim the release, where payment of the rent up to the time fixed was not made.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 832–834; Dec. Dig. § 209.*]

4. LANDLORD AND TENANT (§ 209*)—SUBLETTING—VALIDITY—SURRENDER.
   That a tenant sublet the premises, and the sublessee paid rent direct to the lessor, who gave a receipt providing that it should not affect the liability of the tenant, does not work a surrender, freeing the tenant from further liability for rent.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 832–834; Dec. Dig. § 209.*]

5. LANDLORD AND TENANT (§ 209*)—LIABILITY FOR RENT—RELEASE.
   A lessee cannot free himself from further liability for rent on the ground that he sublet the premises for the benefit of the lessor, where it appeared that he received a large bonus for the sublease; the payment of the bonus being the consideration for the sublease.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 832–834; Dec. Dig. § 209.*]

6. MASTER AND SERVANT (§ 342*)—OFFENSES—PAYMENT TO AGENT.
   Penal Law (Consol. Laws, c. 40) § 439, making it a crime to give or promise an agent or servant any gift or gratuity, without the consent of the master, for the purpose of influencing his actions in relation to his master's business, should be strictly construed, for otherwise honest business men might readily become the innocent victims of dishonest employers and employés.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1287; Dec. Dig. § 342.*]

7. LANDLORD AND TENANT (§ 28*)—LEASES—VALIDITY.
   Where the agent of a lessee represented that he was a broker, and the agent of the lessor, upon his procuring the lease, paid him the usual broker's commission, the lease was not void, under Penal Law, § 439, providing that whoever promises or gives an agent a gratuity, to influence his action towards his principal, shall be guilty of a misdemeanor; it not appearing that the lessor's agent knew of the relation between the lessee and the avowed broker.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 82–84; Dec. Dig. § 28.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. LANDLORD AND TENANT (§ 222*)—RENT—LIABILITY FOR.

Where defendants continued in actual and beneficial possession of property, the fact that the lease was void, because the lessor made a gift to the agent of the lessee, in violation of Penal Law, § 439, will not free the lessees from liability for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 879–884; Dec. Dig. § 222.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Harry Rosenwasser and another against the Amusement Enterprises, Incorporated, and John J. Lyons. From a judgment for defendants, plaintiffs appeal. Reversed, and judgment ordered for plaintiffs.

Argued December term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

Baruth, Goodman & Kraushaar, of New York City (Meyer Kraushaar and Meyer Levy, both of New York City, of counsel), for appellants.

Fischer & Solomon, of New York City (William Solomon, of New York City, of counsel), for respondents.

WHITAKER, J. This action is for rent under a written lease under seal executed by defendant Amusement Enterprises, Incorporated, and upon a written guaranty executed by the defendant Lyons. The execution and delivery of the lease and guaranty are admitted. The record shows that the defendant Amusement Enterprises, Incorporated, went into possession of the premises, and that the rent which accrued under the lease on July 1, 1914, amounting to $300, has not been paid. The defendants set up three separate defenses, as follows:

"(1) That the lease and agreement of suretyship were obtained from the defendants by reason of false and fraudulent representations, to the defendants' damage in the sum of two thousand ($2,000) dollars.

"(2) That plaintiffs promised to deliver to the defendants a release from liability under the lease if the defendant would enter into a lease with one Maurice Frank and Harry Cohen, and if said Frank and Cohen would pay the rent directly to the plaintiffs; that the defendant made such lease, and said Frank and Cohen paid rent to the plaintiffs, but that plaintiffs refused to deliver said release, and that the defendants surrendered the premises, which surrender was accepted by the plaintiffs.

"(3) That plaintiffs, without the knowledge or consent of defendant, and pursuant to an unlawful, fraudulent, and criminal design, and for the purpose of influencing the execution and delivery of the lease and the alleged guaranty agreed to pay Maurice Frank, who was in the employ of defendant, whose duty it was to negotiate and consummate leases for defendant, $100, and that the lease and guaranty were obtained pursuant to such criminal and fraudulent design."

In short, that the plaintiffs violated section 439 of the Penal Law, which provides as follows:

"Whoever gives, offers or promises to an agent, employé or servant, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employé or servant, with intent to influence his action in relation to his principal's, employer's or master's business; or

_____
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an agent, employé or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner to his principal's, employer's or master's business; or an agent, employé or servant, who, being authorized to procure materials, supplies or other articles either by purchase or contract for his principal, employer or master, or to employ service or labor for his principal, employer or master, received directly or indirectly, for himself or for another, a commission, discount or bonus from the person who makes such sale or contract, or furnishes such materials, supplies or other articles, or from a person who renders such service or labor; and any person who gives or offers such an agent, employé or servant such commission, discount or bonus shall be guilty of a misdemeanor, and shall be punished by a fine of not less than ten dollars nor more than five hundred dollars, or by such fine and by imprisonment for not more than one year."

The lease and guaranty were received in evidence. The lease was of an open air moving picture theater in New York City. The term was from May 1, 1913, and ending November 1, 1914, at a rental of $1,600, to be paid in various installments at various times during the term. The lease provided that $150 should be paid June 1, 1913, and $150 on July 1, 1913. It is for the nonpayment of these installments the action is brought.

[1] There is no question that the defendant John J. Lyons guaranteed the rent. It is true that they allege that he executed the guaranty a day before the lease was signed. This, however, is immaterial. The guaranty and lease were delivered simultaneously.

We will take up the defenses in the order in which they are stated.

[2] The first defense absolutely failed for want of evidence to sustain it. The alleged false representations consisted of an alleged statement, made by plaintiffs' agent and counsel, who had all to do with the negotiations, to Maurice Frank, an agent of defendant, that another person was negotiating for the premises, and "that plaintiffs' owner had made, in the summer season of 1911 and 1912, $1,500 each season," and an alleged statement to Mr. Solomon, an officer of the defendant, as follows:

"We have got a party who wants to take it for the same rental we are offering you, but I prefer you." "You seem to be responsible people." "I asked him how long he ran it. He said they ran in 1911 and 1912, and made about $1,500."

Even conceding that all this was said to the defendant, and that these representations were made, and that they were of such a character, if false, as to constitute fraud, there is no evidence that they were false, except that Mr. Solomon testified that the defendant ran the theater for one summer at a certain loss, giving the figures. This testimony did not tend to prove the falsity of the representations, was improper, and was admitted over plaintiffs' objection.

The defendant practically concedes that they failed to substantiate the defense of fraud, and seriously advanced the novel argument that the failure of proof was owing to the plaintiffs' failing to furnish the evidence; therefore the failure should be excused by the court.

[3] Concerning the second defense, the defendants have failed to establish it by a fair preponderance of evidence. They have not shown

sufficient consideration to support the promise, which they allege was made by Kraushaar, to release them from all liability on the lease. The only consideration attempted to be shown was that the defendants, in subletting the premises, should require the rent to be paid directly to the plaintiffs, and that there should be a slight change in the times of payment. This sublease, which presumably was in the possession of the defendants, was not put in evidence, and its absence was unaccounted for. At most, the promise to give a release was executory and conditional, and according to defendants' witness' own story one of the conditions was the payment of the rent directly to the plaintiffs. Defendants' witness' testimony shows that the rent was to be paid to July 1, 1914, in order to get the release, whereas, as matter of fact, the rent has not been paid at all for either June or July, 1914, so that, according to defendants' own testimony, the consideration has failed.

[4] There is no evidence of a surrender of the premises to the plaintiffs. The mere fact that the person to whom the defendant claims to have sublet the premises paid rent to plaintiffs does not establish a surrender. The defendant could not thus force a new tenant on the owner and himself escape the payment of rent. A subletting would not discharge the original lessee from liability for the rent. See Ettlinger. v. Kruger, 146 App. Div. 824, 131 N. Y. Supp. 436. Moreover, when the receipt was given for the first rent paid by the sublessee, the plaintiffs expressly provided in that receipt that the acceptance of the rent from the new tenant should not be considered as a waiver of any rights plaintiffs had against original lessee, the defendant; and this receipt was given to Frank, the agent of defendant, who was also the sublessee or assignee of the original lease from plaintiffs to defendant. If there ever was such a lease, none has been produced.

[5] It is sought by defendant to establish by inference that the subletting was a benefit to the plaintiffs, and therefore a consideration for the alleged promise to release. As matter of fact, the defendant got a bonus of $350 for the sublease. This certainly was not a benefit to plaintiffs.

[6, 7] The third defense is also unproved. It will be observed, by reading the section of the Code above set forth, that "intent" to influence the action of the employé must be shown, and defendants have absolutely failed to show any such "intent." Maurice Frank was the agent of defendant, to whom it is claimed plaintiffs criminally paid $100 to influence. Defendant's representative testified that he first called upon the owners of the property in reference to the lease, and was informed by them that Mr. Kraushaar was their attorney and agent, and had full power in the matter, whereupon Mr. Frank called upon Mr. Kraushaar. Mr. Frank stated to Mr. Kraushaar that he (Mr. Frank) was a "broker." Mr. Kraushaar testified that he never saw Frank before, knew nothing about him, and did not know that he was employed by the defendant. This is not denied, except by Frank, who stated that he told Mr. Kraushaar that he represented the defendant.

It is evident from the evidence that Mr. Kraushaar took Frank to be a "broker," and dealt with him on that basis, and the evidence justifies Mr. Kraushaar in such belief. The subsequent acts of Kraushaar in the manner of paying Frank the broker's commission negatives any guilty intent. It was all open—was not done in secret or clandestinely. An examination of the evidence and plaintiffs' Exhibits 2 and 7 plainly shows that there was no criminal or dishonest intent upon the part of Kraushaar in paying the $100 to Frank. Mr. Kraushaar was simply following the business custom of paying a broker for negotiating a lease. Kraushaar was not even the owner of the premises, but only the agent.

Taking the evidence of the defendants' witnesses, which was given for the special purpose of sustaining this defense, it requires a forced and base construction of it to warrant the inference that Kraushaar was moved by guilty intent. This statute should be strictly construed. A too liberal construction would make it a most dangerous one. The honest merchant might readily become the innocent victim of dishonest employers and employés. The simple exercise of an honest and generous impulse, induced, perhaps, by false representations, might result in great injustice and most serious consequences. In order, therefore, to bring a case fairly within the provisions of this section, the evidence should be preponderating, clear, and of a most satisfactory character.

[8] Admitting, however, that Kraushaar was moved by a guilty intent, and actually violated the above section of the Penal Law, this would be no defense to an action for rent, where the tenants continue in actual and beneficial possession of the property. Fraud in inducing a tenant to take a lease is not a defense in an action for rent, so long as the tenant remains in possession of the leased property. Property may not be retained and enjoyed, and payment of the stipulated rental refused, on the plea of fraudulent practices, or because of the immoral conduct of the owner prior to making the lease. The tenant has ample remedies, but the refusal to pay rent while continuing in possession is not one of them. Vail v. Reynolds, 118 N. Y. 302, 23 N. E. 301; Baar v. N. Y., L. E. & W. R. Co., 125 N. Y. 263, 26 N. E. 145.

From an examination of the entire record, we are of the opinion that none of the defenses has been sustained. The judgment should therefore be reversed, and judgment ordered for plaintiffs for the sum of $300, with interest from July 1, 1914, with costs in this court and in the Municipal Court. All concur.