ARKADELPHIA MILLING COMPANY *v.* GODDARD.

Opinion delivered April 9, 1928.

1. APPEAL AND ERROR—ORDER DIRECTING VERDICT.—On appeal from the judgment on a directed verdict for defendants, the court will give the testimony tending to support plaintiff's cause of action its highest probative value.

2. GUARANTY—CONSTRUCTION OF GUARANTY BOND.—Where the execution of a guaranty bond was the only condition precedent to placing a contract for the sale of merchandise to the principal in full force and effect, such bond should be treated as contemporaneous with the contract, though bearing a different date.

3. GUARANTY—NOTICE OF ACCEPTANCE.—Where there has been a precedent request for a guaranty, notice of its acceptance need not be given to the guarantor.

4. GUARANTY—LIABILITY FOR "SHORTAGE."—A guaranty bond binding sureties for any shortage in the principal's accounts, *held* not to mean that only a fidelity bond was executed and that the guarantors became liable only for money collected and not accounted for by the principal, where the latter's contract permitted him to sell

merchandise for his own account, to whom he pleased, at his own price, without reporting the purchasers' names, quantity sold, or price, to the consignor; the word "shortage" meaning only the balance due after allowance of credits for remittances to the consignor.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; reversed.

*Barber & Henry, Troy W. Lewis* and *Clayton Freeman,* for appellant.

*Ben F. Reinberger* and *J. A. Tellier,* for appellee.

SMITH, J. Appellant brought this suit in the Pulaski Circuit Court to recover a sum alleged to be due it on account of merchandise sold and shipped to one Jack Goddard, under a written contract of continuing guaranty which Goddard's co-defendants had executed. Service was not had upon Goddard, but the other defendants, the alleged guarantors, filed an answer, in which they denied liability, upon the grounds that the instrument sued upon was a mere offer of guaranty, of the acceptance of which by the guarantee they had not been advised, and that the alleged guaranty was in fact a mere fidelity bond whereby, if liable at all, they were liable only for such sums of money as Goddard might collect and fail to account for.

The court below upheld both of these contentions, and, under this view, directed the jury to return a verdict in favor of the defendants, which was done. We must therefore give to the testimony tending to support plaintiff's cause of action its highest probative value.

The bond sued upon reads as follows:

"Personal Indemnity Bond.

"Know all men by these presents:

"That we, the undersigned,_____

acknowledge ourselves indebted to the Arkadelphia Milling Company, of Arkadelphia, Arkansas, in the sum of five thousand and no/100 ($5,000) dollars, same to be void upon the following terms and conditions.

"Whereas Jack Goddard, of 1201 Marshall Street, Little Rock, Arkansas, has been appointed the city rep-

resentative of Little Rock and North Little Rock, Arkansas, to handle and sell the products of the said Arkadelphia Milling Company: now if the said Jack Goddard shall faithfully perform the terms of the said contract and account to the said Arkadelphia Milling Company for all money coming into his hands through and by reason of the said contract, then and in that event this instrument shall be null and void, but for any shortage that might occur in his accounts we consider and acknowledge ourselves bound.

"Witness our hands and seals on this first day of June, 1923.

"F. L. Brown, Atty., 414 A. O. U. W. Bldg.
"A. W. D. Overton, 423 Ferry St.
"F. J. Donahue, 2617 W, 14th St.
"Albert McMahon, Salesman Am. Gro. Co., 1522 Oak St.
"Wm. Riley, Contr., 519 Cumberland St."

So much of the contract referred to in the bond appointing Goddard as city representative of the plaintiff milling company as need be here considered reads as follows:

"This contract, made this 12th day of June, 1923, by and between Arkadelphia Milling Company, hereinafter called the consignor, and Jack Goddard, hereinafter called the consignee, witnesseth: That the consignor has delivered to the consignee on consignment certain merchandise, the description and present market price of which f. o. b. cars Little Rock, Arkansas, is as follows, to-wit: Flour, feed and meal.

"The consignee is to (pay freight) on said merchandise from Arkadelphia, Arkansas, to Little Rock, and is also to pay all drayage and storage charges. * * * The consignee shall have the right to sell the said merchandise in the due course of business for not less than the market price on the day of sale, and the consignee shall receive as commission all amounts for which the said goods are sold in excess of the market price and interest,

and the proceeds of any and all sales of said merchandise, less the said commission, shall be remitted to the consignor by postoffice money order or cashier's check, weekly, or deposited in Exchange National Bank to the credit of Arkadelphia Milling Company."

The contract provided the manner in which Goddard might return and receive credit for any merchandise found to be unsatisfactory.

The first transaction under this contract occurred June 21, 1923, at which time merchandise amounting to $970.09 was shipped to Goddard, and thereafter other shipments were made, the last being March 31, 1924. An itemized statement of the account was exhibited and shown to be correct by the accounting officers of the appellant company, from which it appeared that merchandise of the total value of $11,314.98 was shipped to Goddard, and that credits amounting to $9,111.09 were received, leaving a net balance, with interest, of $2,203.89, for which amount judgment was prayed.

The contract—which we have not copied in full—contains no restrictions or directions in regard to sales which Goddard might make, except that the merchandise should not be sold at less than the purchase price, and he was at liberty to sell to whom he pleased. The accounting officers of the plaintiff company who testified concerning the balance due on the account did not know to whom sales had been made, nor what amounts were due Goddard by his customers to whom he had sold merchandise. It did not therefore appear whether Goddard had remitted to the plaintiff company all collections made by him.

The court instructed the jury that the defendant guarantors were not liable, for two reasons: "One is, the bond was executed prior to the execution of the contract, and it is an obligation to pay certain amounts, if any, that may accrue from Goddard, the principal. When that bond was signed the contract had not been signed, and the bond was forwarded to the plaintiff, and the plaintiff subsequently, on the 12th day of June, the date

of the signing of the contract, and the bond was signed on the first day of June, signed the contract, but plaintiff did not notify these defendants that the contract had been signed by the plaintiff, and that any liability would accrue under the bond." The court further charged the jury that the word "shortage" appearing in the bond "means the defalcation of moneys coming into his hands through the operation of the contract, and there is no proof in the case that there has been any defalcation of moneys or goods, but, so far as the proof is concerned, it may be uncollected debts from the resale of the produce delivered to the principal in the case." For both these reasons the court directed the jury to return a verdict in favor of the defendant guarantors.

The testimony on the part of the plaintiff was to the effect that Goddard was promised a contract, such as was later executed, upon furnishing a satisfactory bond, and that both instruments were treated as having been simultaneously executed, although they bore different dates, and that no goods were furnished under the contract until after its execution and approval by the home office of the company.

Appellees insist that the court below was correct in construing the bond as a mere offer of guaranty, and that, as such, they were entitled to notice of its acceptance before any liability could accrue against them. On the other hand, appellant contends that the writing was a direct promise of guaranty, and not a mere offer of guaranty, and that notice of its acceptance was not essential to the accrual of liability thereunder.

Under the plaintiff's testimony the jury might have found that the execution of the bond by satisfactory and sufficient sureties was the only condition precedent to placing the contract for the sale of the merchandise into full force and effect, regardless of the date of the bond or the contract, and, if so, they should be treated as contemporaneous instruments, although they bore different dates.

In 12 R. C. L., page 1072, § 23 of the chapter on "Guaranty," it is said: "A written guaranty to pay a debt the proof of which rests in parol evidence, is legal and enforceable. Even if the principal obligation is evidenced by a writing, it need not be completely executed and delivered at the time the guaranty is entered into."

At § 43 of the chapter on "Guaranty" in 28 C. J., page 913, it is said: "A contract of guaranty may be executed contemporaneously with the principal contract or after it is executed, and the fact that the guaranty is executed before the principal contract is executed is immaterial, where they are delivered simultaneously, or where the guarantee acts on the faith of such guaranty, in entering into the principal contract."

In the case of *Hudson Trading Co.* v. *Durand*, 194 App. Div. 248, 185 N. Y. Supp. 187, it was held by the Supreme Court that, where a guarantor signs an agreement to become jointly liable with a buyer in the performance of a sales contract, in consideration of the seller entering into such sales contract, and where such guaranty is an inducement to the seller to enter into the contract, the guarantor is liable for the buyer's nonperformance, without executing a guaranty subsequent to the execution of the sales contract.

The case of *Rosenwasser* v. *Amusement Enterprises, Inc.*, 88 Misc. Rep. 57, 150 N. Y. Supp. 561, decided by the same court, is to the same effect.

In the case of *J. R. Watkins Medical Co.* v. *Brand*, 143 Ky. 468, 136 S. W. 867, 33 L. R. A. (N. S.) 960, it was held by the Supreme Court of Kentucky (to quote the syllabus in that case) that: "Notification of acceptance of the guaranty is not necessary to bind persons who sign an agreement to be responsible for the faithful performance of his contract by one about to be reappointed as salesman for the obligee for another year, since the guaranty is absolute, and not conditional, and it is immaterial that the contract has not been signed by either employer or employee when the sureties put their names to the guaranty which is attached to it."

In the annotator's note to this case it is said: "So, where the terms of a proposed guaranty contemplate acceptance by the delivery of merchandise on credit to a third person, the offer can be accepted by the furnishing of merchandise pursuant to the terms of the guaranty, the contract becomes complete when credit is actually so furnished, and no notice of acceptance is necessary where not called for by the offer."

In the case of *Falls City Construction Co.* v. *Boardman,* 111 Ark. 415, 163 S. W. 1134, appears this statement:

"In 20 Cyc. p. 1407, III, it is said: 'Both the English and American cases hold generally that the rule requiring notice by the guarantee of his acceptance of the guaranty applies only where the guaranty is, in legal effect, an offer or proposal. Where the transaction is not merely an offer to guarantee the payment of debts, and amounts to a direct promise of guaranty, all that is necessary to make the promise binding is that the promisee should act upon it; he need not notify the promisor of his acceptance, and at page 1409 it is said: 'Where there has been a precedent request for the guaranty, notice of its acceptance need not be given to the guarantor.' See *Stewart* v. *Sharp County Bank,* 71 Ark. 585-589, 76 S. W. 1064; *Davis* v. *Wells,* 104 U. S. 159, 26 L. ed. 686."

Under the plaintiff's testimony there was a precedent request for the guaranty, in that the plaintiff was proposing to sell Goddard merchandise upon the condition that Goddard secure satisfactory guarantors, and, in signing this bond, the defendant guarantors must necessarily have known that the plaintiff milling company would sell merchandise to Goddard if the milling company satisfied itself that the guaranty was sufficient, that is, that the guarantors were responsible for the amount of the bond. Moreover, the bond, by its terms, is not a mere offer to guarantee, but is a direct and unconditional promise to pay $5,000, to be void upon

the condition that Goddard should faithfully perform the terms of the contract and account to the milling company for all money coming into his hands under the contract.

See also *Davis Sewing Machine Co.* v. *Richards,* 115 U. S. 524, 6 S. Ct. 173, 29 L. ed. 480; *McCarroll* v. *Red Diamond Clothing Co.,* 105 Ark. 443, 151 S. W. 1012, 43 L. R. A. (N. S.) 475; *Beeson* v. *LaVasque,* 144 Ark. 522, 223 S. W. 355; *First National Bank* v. *Solomon,* 170 Ark. 555, 280 S. W. 659; *Ouachita Valley Bank* v. *DeMotte,* 173 Ark. 52, 291 S. W. 984.

We are of the opinion also that the court was in error in construing the word "shortage" to mean that only a fidelity bond had been executed, and that the guarantors became liable only for such money as Goddard collected and failed to account for.

The contract did not authorize Goddard to sell merchandise for the account of the plaintiff. He sold for his own account and to whom he pleased, with the right to fix his own price, keeping for himself any excess over the market price at which he himself bought the merchandise. He was not required to report the names of persons to whom he sold, or the quantity sold, or the price of the sale. He exercised his own discretion in these matters, and this the milling company allowed him to do because of the indemnity or guaranty of the bond to the extent of $5,000 that Goddard "shall faithfully perform the terms of the said contract," and Goddard's contract required him to pay for merchandise which he bought from the plaintiff milling company. It was obviously not the purpose of the bond to permit Goddard to make indiscriminate sales of which he was required to make no report and over which the milling company had no supervision or control, nor for Goddard to be liable only for such sums of money as he might collect. Under such a contract Goddard would have had everything to gain and nothing to lose, and would have been under no constraint to use discretion in making sales.

If this was the contract, he could have sold to anyone willing to buy and have taken the chance, at the milling company's expense, and without risk to himself, that the purchasers would pay.

The bond is somewhat ambiguous, but, when read in the light of the contract the performance of which it guaranteed, we think that the proper construction of it is that the word "shortage" meant such balance as was due after credits had been allowed for such remittances as were made to the consignor "by postoffice money order or cashier's check weekly, or deposited in Exchange National Bank to the credit of the Arkadelphia Milling Company."

The judgment of the court below will therefore be reversed, and the cause remanded.