COPELAND *v.* UNION INDUSTRIAL LOAN CORPORATION.

Opinion delivered April 25, 1932.

*H. M. Jacoway* and *Lee Miles,* for appellant.

*Wills, Wills & McLees,* for appellee.

SMITH, J. Appellee instituted suit on September 11, 1930, in the municipal court of the city of Little Rock against R. E. Copeland and N. E. Douglas on a note which they had signed as sureties for J. W. Deavers, which note was payable to appellee's order.

An answer was filed, in which Douglas alleged that his name had been forged, and Copeland answered that he had signed the note upon condition that Douglas would also sign it, and that it should not be delivered until he had done so. The answer further alleged that, on October 18, 1930, written notice had been served upon appellee, signed by both Copeland and Douglas, demanding that suit be brought against Deavers as the principal in said note, but that such suit had not been brought, and that they had been exonerated by this failure to sue.

Douglas testified that he did not sign the note. Copeland admitted that he did sign the note, but testified that it was agreed between himself and Deavers that the note would not be delivered to the payee unless and until Douglas·had signed it. It was not shown, however, that appellee was advised of this agreement between Copeland and Deavers, nor was it shown that appellee was advised that the signature of Douglas was not genuine.

On behalf of appellee, it was shown that there was a balance due upon the note; that Deavers died in May before the institution of suit the following September, and that he left no estate, and there was no testimony that there had been any administration upon his estate. Upon this testimony the court rendered judgment in favor of Douglas and against Copeland, from which judgment Copeland has appealed.

The agreement between Copeland and Deavers that the note should not be delivered unless Douglas signed it, of which agreement appellee was not advised, constituted no defense in favor of Copeland, who did sign it. *Saxon* v. *McGill,* 179 Ark. 415, 16 S. W. (2d) 987; *White-Wilson-Drew Co.* v. *Egelhoff,* 96 Ark. 105, 131 S. W. 208;

*Williams* v. *Morris,* 99 Ark. 319, 138 S. W. 464; *J. R. Watkins Medical Co.* v. *Warren,* 150 Ark. 542, 234 S. W. 618; § 7780, Crawford & Moses' Digest; § 8296, Crawford & Moses' Digest.

The notice served upon appellee to sue Deavers as principal was given pursuant to §§ 8287 and 8288, Crawford & Moses' Digest, which read as follows:

"Section 8287. Any person bound as surety for another in any bond, bill or note, for the payment of money or the delivery of property, may, at any time after action has accrued thereon, by notice in writing, require the person having such right of action forthwith to commence suit against the principal debtor and other party liable.

"Section 8288. If such suit be not commenced within thirty days after the service of such notice, and proceeded in with due diligence, in the ordinary course of law, to judgment and execution, such surety shall be exonerated from liability to the person notified."

It is insisted that the failure to sue Deavers pursuant to the demand that this be done exonerated the sureties. But we do not think so.

It will be remembered that Deavers was dead when the notice was served, and for this reason the sections of the statute above quoted do not apply.

At volume 2 of Brandt on Suretyship and Guaranty (3d ed.), § 778, in a discussion of statutes similar to those above quoted, it was said: "Another statute provided that a surety might, by writing, require 'the person having such right of action forthwith to commence suit against the principal debtor and other parties liable.' Held, a surety could not, after the death of the principal, exonerate himself by notifying the creditor to present his claim against the estate of the principal. The case was not within the meaning of the statute."

The case of *Hickam* v. *Hollingsworth,* 17 Mo. 475, was cited in the note to the text quoted. This case construed certain sections of the statutes of Missouri, from which our statute was obviously borrowed. Indeed,

we acquired the statute by virtue of the fact that the Territory of Arkansas was organized out of territory originally a part of the Territory of Missouri, and the act of Congress approved March 2, 1819, "* * * establishing a separate territorial government in the southern part of the Territory of Missouri," provided, in § 10 thereof, "That all the laws which shall be in force in the Territory of Missouri, on the fourth day of July next, not inconsistent with the provisions of this act, and which shall be applicable to the Territory of Arkansas, shall be, and continue, in force in the latter territory, until modified or repealed by the legislative authority thereof." Steele & M'Campbell's Digest, Laws of Arkansas Territory (1835), page 36.

The Missouri statute appears in a Digest of the laws of the Territory compiled in 1818, page 368, and was amended by an act approved February 5, 1825, which was after the admission of Missouri to statehood. Vol. 2, Digest, Laws of Missouri (1825), page 735.

A comparison of this act with our present statute leaves no doubt as to the origin of our existing statute.

Sections 8287 and 8288, Crawford & Moses' Digest, were brought forward from §§ 1 and 2 of chapter 137 of the Revised Statutes of Arkansas (1838), page 722, this chapter being entitled "Securities," and it there appears as having been approved December 18, 1837, which was shortly after the admission of this State into the Union. The identity of these sections with the statutes of Missouri construed in the case of *Hickam* v. *Hollingsworth, supra,* becomes apparent when the same are compared.

We feel constrained therefore to give much deference to this Missouri case, although it was not decided until 1853, which was subsequent to the enactment of our present statute, it being an amendment of a Missouri statute, which we acquired by virtue of the fact that the Territory and State of Arkansas had been formed out of territory once a part of the Territory of Missouri. Inasmuch as the decision of the Supreme Court of Missouri was not rendered until after our statute had been

enacted, it is not controlling upon us. *Townes* v. *Krumpen,* 184 Ark. 913, 43 S. W. (2d) 1083. Yet, in view of the history of the legislation, we read the Missouri case with great deference.

In the case of *Cathcart* v. *Robinson,* 5 Peters (U. S.) 264, Chief Justice MARSHALL said the rule had been uniformly observed by the Supreme Court of the United States, in construing adopted statutes, to accept the construction of the statute made by the courts of the country by whose Legislature the statute was enacted, if rendered prior to its adoption. He there also said: "But, however we may respect subsequent decisions, and certainly they are entitled to great respect, we do not admit their absolute authority." Lewis' Sutherland Statutory Construction, (2d ed.) vol. 2, page 785; *Northcutt* v. *Eager,* 132 Mo. 265, 33 S. W. (2d) 1125.

The Missouri case to which reference has been made arose under facts substantially identical with those of the instant case, and it was there held (to quote the headnote) that: "Under the act concerning 'securities' (R. C. 1845), a surety cannot exonerate himself from liability by notifying the creditor, after the death of the principal debtor, to present the demand for allowance against his estate, and his failure to do so within thirty days. A case where the principal is dead is not within the meaning of the statute." See also *Davis* v. *Gillilan,* 71 Mo. App. 498.

In view of the fact that this decision was rendered subsequent to the adoption by this State of the statute there construed, it is not controlling, but, when given the deference which its sound reasoning and the history of the legislation there construed entitle it to, we feel constrained to follow that case, and we therefore hold that our statute has no application in a case like this, where the principal was dead when the notice to sue was served.

The judgment of the court below was based upon this construction of the statute, and, as we concur in that view, the judgment must be affirmed, and it is so ordered.