## MADISON COUNTY FARMERS ASS'N v. AMERICAN EMPLOYERS' INS. CO.

### Civ. No. 1077.

United States District Court
W. D. Arkansas, Fort Smith Division.

May 28, 1953.

754

Robert R. Cress, Huntsville, Ark., for plaintiff.

Daily & Woods, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

The defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The motion is based upon:

(1) The complaint,

(2) The answer,

(3) The amendment to the answer,

(4) Affidavit of J. S. Daily attached to the motion and exhibits thereto,

(5) The certificate of the Clerk of the Circuit Court of Madison County, Arkansas, and

(6) The certificate of the Clerk of the Chancery Court of Madison County, Arkansas.

The facts on which the motion is based are not in dispute and the question before the court is one of law.

The facts as shown by the record are as follows:

The plaintiff is a corporation organized under the laws of Arkansas with its principal place of business in Madison County. The defendant is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in the City of Boston and is licensed to transact business in the State of Arkansas.

The plaintiff, between August 17, 1951, and June 28, 1952, was engaged in the business of selling feed, seed, fertilizer and other farm supplies in Madison County, Arkansas, and in the course of such business employed Kelley Ottis Hill as its manager, whose duty it was to collect on plaintiff's account and to safely hold for plaintiff moneys due from the sales made in the due course of plaintiff's business.

On August 17, 1951, the defendant, for the consideration of $25 paid by plaintiff, executed and delivered to plaintiff a bond, a copy of which is attached to plaintiff's complaint as Exhibit "A".

The bond provides:

"The American Employers' Insurance Company (hereinafter called Surety), in consideration of an agreed premium, binds itself to pay to Madison County Farm Association, Huntsville, Arkansas, (hereinafter called Employer), the amount of any pecuniary loss which any Employee named in the schedule hereto attached or added thereto as hereinafter provided, may, while in any position and at any location in the service of the Employer, alone or in collusion with others, cause to the Employer, not exceeding, however, the amount set opposite the name

of such Employee, through any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or wilful misapplication committed during the one year term commencing on the 17th day of August, 1951, at noon, * *."

The bond further provides that the total liability shall not exceed the largest single amount effective as to any position held by such employee.

Other provisions in the bond prescribe the procedure to be followed by the obligee in the event of a loss on account of the acts of the employees. The bond specifically applies to Kelley Ottis Hill, Manager, in the amount of $5,000, and the consideration paid by the obligee to the defendant was $25.

The complaint further alleges that the said Kelley Ottis Hill had in his custody and under his control as Manager for plaintiff money in excess of $5,000 which he had received as such Manager for the use and benefit of the plaintiff and that he, the said Hill, wrongfully converted the same to his own use and has not accounted to the plaintiff for such amount.

The plaintiff prays judgment against the defendant for the face amount of the bond of $5,000 because of the alleged dishonesty of the said Kelley Ottis Hill.

In due time the cause was removed to this court on the ground of diversity of citizenship of the parties.

After removal, the defendant filed its answer in which it admitted all of the allegations of the complaint except that it denied that Kelley Ottis Hill was guilty of dishonesty as Manager for plaintiff and denied that it was indebted to the plaintiff in the sum of $5,000 or any other sum.

On May 12, 1953, the defendant was granted permission to file an amendment to its answer in which it realleged the allegations in its original answer and alleged:

"Further answering the defendant states that on April 11, 1953, it served on the plaintiff a notice in writing demanding the plaintiff to forthwith commence suit against Kelley Ottis Hill, the principal debtor and other party liable to the plaintiff under bond F-101623 of this defendant, for any defalcation which plaintiff alleges to have occurred under said bond in its complaint filed against the defendant, and pursuant to Ark.Stats.1947, Section 34-333. That plaintiff is a corporation organized under the laws of the State of Arkansas with its principal place of business located in Madison County, Arkansas. That the said Kelley Ottis Hill is a citizen and resident of Madison County, Arkansas, and has continuously resided in Madison County, Arkansas, from the date of the filing of this action to the present. The plaintiff has failed and refused for more than 30 days following the service of said notice in writing to commence suit against Kelley Ottis Hill in any court, and plaintiff's failure so to do, and to comply with said notice, has exonerated this defendant from liability to the plaintiff under said bond pursuant to the provisions of Ark.Stats.1947, Section 34-334."

The motion for summary judgment hereinbefore referred to was filed by defendant on May 13, 1953. Attached to the motion is the Affidavit of J. S. Daily, one of the attorneys for defendant, in which he states that the notice referred to in the amendment to the answer was sent by registered mail to Mr. Virgil Hatfield, President, and Mr. E. R. Jones, Secretary of Madison County Farmers Association, Huntsville, Arkansas, and that a similar notice was sent by registered mail to Mr. Robert R. Cress, Attorney of Record for plaintiff. Attached to the Affidavit as Exhibit "A" is a copy of the notice and registry return receipts showing receipt of the notice by the President and Secretary of plaintiff and by the attorney on April 11, 1953. Also attached to the Affidavit as Exhibit "B" is a letter written by the said Robert R. Cress, attorney, and addressed to the attorneys for defendant. The letter is dated April 11, 1953, and acknowledges receipt of the notice demanding that suit be commenced against the said Kelley Ottis Hill.

Also attached to the Affidavit is the certificate of the Circuit Court Clerk of Madison County and the certificate of the Chancery Court Clerk of Madison County, Arkansas, certifying that no complaint or action of any kind had been filed on May 12, 1953, in either of the courts by the plaintiff herein against Kelley Ottis Hill.

Notice of the filing of the motion for summary judgment was served on the date of its filing, May 13, 1953, and the plaintiff and its attorney were notified that the motion would be presented to the court at 9 a. m. on May 25, 1953, or as soon thereafter as the parties might be heard. However, the court directed that hearing on the motion be had in accordance with Local Rule No. 8, and the defendant filed its memorandum of authorities in support of the motion on the same date, May 13, 1953. On May 23, 1953, the plaintiff responded to the motion by filing its memorandum brief and statement of reasons and citation of authorities in opposition to the motion. On May 26 the defendant filed its reply to plaintiff's brief, and the motion is now before the court on the record and the briefs submitted by the attorneys for the respective parties.

Section 34–333, Ark.Stats.1947, provides:

"Any person bound as security for another in any bond, bill or note, for the payment of money or the delivery of property, may at any time after action hath accrued thereon, by notice in writing, require the person having such right of action, forthwith to commence suit against the principal debtor, and other party liable."

Section 34–334, supra, provides:

"If such suit be not commenced within thirty (30) days after the service of such notice, and proceeded in with due diligence in the ordinary course of law, to judgment and execution, such surety shall be exonerated from liability to the person notified."

The notice as provided by the statute was given by the defendant to the plaintiff and the plaintiff refused for more than thirty days to commence a suit against Kelley Ottis Hill and, therefore, the defendant contends that it is exonerated from all liability on the bond. In its original brief in support of the motion, the defendant cites the statutes above set forth and the cases of Arkadelphia Milling Co. v. Goddard, 176 Ark. 958, 4 S.W.2d 923, and Donahue v. Arkadelphia Milling Co., 179 Ark. 409, 16 S.W.2d 569.

The plaintiff contends:

"(1) The bond executed by defendant herein and breach of which is the basis of this action is a bond given to secure the performance of a trust or the duties of an office and thus is excepted from the provisions of Ark. Stat.1947, Sections 34–333 and 34–334, by the provisions of Ark.Stat.1947, Section 34–335;

"(2) Ark.Stat.1947, Sections 34–333 and 34–334, are not applicable to the bond in issue here because those sections of our code pertain to suretyship only and the bond in issue here is a contract of insurance and not of suretyship;

"(3) The bond in issue here being a contract of insurance, it should be strictly interpreted so as not to allow a forfeiture if a reasonable interpretation could possibly have that effect;

"(4) A reasonable interpretation of the bond in issue is that said bond is an insurance policy given to secure the performance of a trust or the duties of an office, thus, even if the Statutes of Arkansas cited herein were applicable to insurance contracts, the defendant should not be exonerated and a forfeiture should not be allowed because Section 34–335 of our code excepts the obligors of this bond from the benefits of the two preceding sections."

Section 34–335, supra, provides:

"The two preceding sections shall not extend, first, to the bond of any executor, administrator, guardian or other person given to secure the performance of his trust, or the duties of his office, nor, second, to any bond with collateral conditions, except bonds with

collateral conditions exclusively for the payment of money or delivery of property, or exclusively for the performance of a covenant or agreement for the payment of money or delivery of property."

■ The statutes involved herein were derived from the statutes of the Territory of Missouri. When the Territory of Arkansas was created from the Territory of Missouri, it was provided that the laws of the Territory of Missouri in force and effect should be applicable to the Territory of Arkansas and that they should continue in force in the latter territory until modified or repealed by the legislature of Arkansas. The statute was enacted in Arkansas on December 18, 1837, shortly after the admission of Arkansas into the Union. In construing adopted statutes, the rule is to accept the construction of the statute made by the courts of the country by whose legislature the statute was enacted, if such construction was rendered prior to its adoption. See Copeland v. Union Industrial Loan Corporation, 185 Ark. 643, 48 S.W.2d 845. The plaintiff has cited the case of Aetna Insurance Co. v. Monaghan, 38 Mo. 432, as an authority that the bond in suit was given to secure the performance of a trust and was, therefore, excluded from the operation of the notice and exoneration provisions of the statute. But the case is clearly distinguishable from the instant suit. The court in its opinion outlined the section of the Missouri Statute comparable to Section 34–335, supra, as follows:

That the other provisions of the statute "shall not extend to the bond of any administrator, executor, guardian, curator, officer or other person given to secure the performance of the duties of his office, trust, place of business; nor to any bond with collateral conditions, except bonds with conditions exclusively for the payment of money or the delivery of property or for the performance of any covenant or agreement for the payment of money or delivery of property."

■ The court held that the bond sued on in that case was not within the provisions of the statutes for the reason that it contained collateral conditions and that the conditions of the bond were not "exclusively for the payment of money or the delivery of property or for the performance of any covenant or agreement for the payment of money or delivery of property." Thus, the contention of the plaintiff is not sustained for the reason that the bond in suit is only for the payment of money or delivery of property and, under the express terms of Section 34–335, supra, the bond is not excluded from the operation of Sections 34–333 and 34–334, supra.

■ The next proposition argued by plaintiff in its brief is in support of its contention that the statutes in question, being in derogation of the common law, strict construction is required. The plaintiff is correct in that contention. In Thompson v. Treller, 82 Ark. 247, at page 251, 101 S. W. 174, at page 175, the court said:

"The statute in question is in derogation of the common law and of the contractual rights of the obligee on the bond, and should be strictly construed."

■ This rule does not aid the plaintiff since there is no question but that the notice was properly given and the plaintiff, obligee in the bond, failed to commence a suit against Kelley Ottis Hill within thirty days after the service of such notice. The statute was not intended to require an impossible thing of the obligee in a bond and, as stated in Thompson v. Treller, supra, at page 251 of 82 Ark., at page 175 of 101 S. W., "If the principal had absconded, was out of the state, and his whereabouts unknown to the obligee, and if he had no property in the state, it was impossible for the obligee to comply with the demand of the sureties to sue him. Ordinarily the question of solvency or insolvency of the principal is immaterial, as the sureties have the right to require suit to be brought and diligently prosecuted in order to test his ability to pay, whether he is in fact solvent or not; but where he left the state, and has no property here, there are no means of getting service of process, so as to maintain an action. There are no means, under those circumstances, of testing his solvency or abil-

ity to pay by an action." In the instant case, the principal debtor is a resident of Madison County, Arkansas, the very county where the plaintiff is engaged in business. In fact, the plaintiff does not contend that the notice is not sufficient but contents itself with the assertion that Sections 34-333 and 34-334, supra, do not apply for the reason that the bond was given to secure the performance of a trust. In making this contention, the plaintiff clearly overlooks the latter part of Section 34-335, supra.

The next argument of plaintiff on its brief is that the statutes involved herein apply only to "suretyship" but that the bond in the instant case is a fidelity bond or a contract of insurance rather than a contract of suretyship, and that the insurance law rather than the suretyship law should govern.

In Hall v. Equitable Surety Co., 126 Ark. 535, 191 S.W. 32, the court held that the statutes did not apply to an original contract of indemnity. In the opinion at page 540 of 126 Ark., at page 34 of 191 S.W., the court said:

"Contracts of indemnity 'are distinguished from those of guaranty and suretyship, in that in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred, or is about to incur, to a third person, and is not as in guaranty and suretyship a promise to one to whom another is answerable.' 22 Cyc. 80. * * *"

In Vandiver & Co. v. Pollak, 107 Ala. 547, 553, 19 So. 180, 182, it is said:

" 'Indemnity springs from contract, express or implied, and in a general way may be defined as the obligation or duty resting on one person to make good any loss or damage another has incurred while acting at his request or for his benefit.' " See, also, 14 R.C.L. 43, Sections 1 and 2.

At page 539 of 126 Ark., at page 34 of 191 S.W., the court, in speaking of the statutes, said:

"Manifestly, the statute is applicable only in those cases where there is a principal debtor, or obligor, and a sure-

ty. In such cases, where the surety has notified the creditor or obligee as prescribed by the statute, then such creditor or obligee cannot maintain an action against the surety until he has brought suit and pursued the same with diligence to judgment and execution against the principal debtor or obligor."

The case of Shores-Mueller Co. v. Palmer, 141 Ark. 64, 216 S.W. 295, 296, was a suit by plaintiff against the defendants to recover the price of certain merchandise. The plaintiff had entered into a written contract with W. G. Kindel by the terms of which Kindel was to purchase goods from plaintiff for resale. Kindel was to obtain the goods at wholesale prices and sell them in accordance with instructions and at retail prices. The defendants other than Kindel guaranteed the performance of the contract as follows:

"we hereby guarantee to it [plaintiff], jointly and severally, the honest and faithful performance of the said contract by him [Kindel], waiving notice of acceptance and all notices, including notice of salesman's default, and agree that any extension of time or change of territory shall not release us from liability hereon."

Kindel became insane and a guardian was appointed for him. The guarantor defendants gave notice to plaintiff to require it to commence suit against Kindel. The plaintiff failed to comply with the notice within thirty days after it was served. The court held that the guarantors were released because of plaintiff's failure to commence a suit and, in discussing the question, at page 68 of 141 Ark., at page 297 of 216 S.W., said:

"This brings us to the consideration of the question of whether or not a guarantor under a contract like the present one is a surety within the meaning of the statute. It is true that there is a difference between the contract of a surety and that of a guarantor, in this, that the contract of a surety starts with the agreement, and that the liability of a guarantor is established for the first time with the de-

fault of the principal debtor. At the same time, a guaranty contract is generally regarded as a breach of suretyship, and the effect of the reasoning in the case of Hall v. Equitable Surety Company, 126 Ark. 535, 191 S.W. 32, is to hold that a guarantor is a surety within the meaning of sections 7921 and 7922 of Kirby's Digest. [Sections 34–333 and 34–334, Ark.Stats.1947.] In that case the court held that the sureties on a bond in an indemnity contract did not come within the statute, but treated guaranty contracts as coming within the provisions of the statute." See, also, Fausett Builders, Inc., v. Globe Indemnity Company, 220 Ark. 301, 247 S.W.2d 469.

In Restatement of the Law, "Security", Section 82, suretyship is defined as follows:

"Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform."

One of the examples given in the notes following Section 82, supra, and appearing at page 238 in Restatement of the Law, "Security", is:

"A corporation contracts with the promisee to save him harmless from loss due to defaults from his employees. This is a contract of suretyship rather than indemnity because it is essentially a tripartite situation involving a promise to answer for the default of another."

In Volume 50, Am.Jur., Suretyship, § 313, page 1108, the rule is stated:

"While it is a rule that the courts, in construing an ambiguous provision in a compensated surety contract, apply the rules applicable to insurance contracts and while insurance contracts are in many respects similar to surety company contracts, yet it is said, there is a wide difference between the two contracts. Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereas a contract of suretyship is one to answer for the debt, default or miscarriage of another, and the nature of the contract is not altered because made by a corporation for compensation. The contract creates a tripartite relation between the party secured, the principal obligor, and the surety, and the rights, remedies and defenses of a surety cannot be disassociated from this relationship although the contract is called one of insurance."

In 72 C.J.S., Principal and Surety, § 30, page 527, it is said:

"Where one binds himself as surety at the request or with the assent of the creditor alone, as between them, the relationship is that of suretyship, and is attendant with all the rights and liabilities flowing therefrom, although without any knowledge, assent, or request on the part of the principal; and as between the surety and creditor the latter is bound by all the rules of law respecting sureties, and the surety likewise is bound by such rules in respect of his rights and liabilities as against the creditor."

The plaintiff cites Articles 6244 and 6245 of the Revised Statutes of Texas, Vernon's Texas Statutes 1936, as being substantially the same as the statutes herein involved. An examination of the Texas Statutes and a comparison with the Arkansas Statutes does not justify that statement. Attention is also called to the case of American Surety Co. of New York v. Austin, Banking Commissioner, Tex.Com.App., 17 S.W.2d 777, and the contention is that the case is an authority for holding that the bond in the instant suit is an insurance contract and is not a suretyship. The case does not support the contention because of the vast difference in the facts as well as the provisions of the statute.

The plaintiff also argues that, since it paid defendant a premium for the execution of the bond, the bond should be strictly construed and all doubts resolved in favor of plaintiff.

In Morley v. McGuire, 219 Ark. 206, at page 209, 242 S.W.2d 112, at page 114, the court said:

"The law does not have the same solicitude for surety companies engaged in issuing indemnity bonds for a profit as it does for individual sureties who voluntarily undertake to answer for the obligations of others. Although calling themselves sureties, such companies are in fact insurers, and in determining their rights and liabilities the rule of strictissimi juris, which prevails as to a voluntary or accommodation surety, does not apply. 50 Am.Jur., Suretyship, § 318."

In American Bonding Co. v. Morrow, 80 Ark. 49, 96 S.W. 613, 615, 117 Am.St.Rep. 72, the court said:

"It is now well settled that the bond of a surety company, like any other insurance policy, is to be most strongly construed against the insurer. The language of the bond is that selected and employed by the insurer, and, when doubtful or ambiguous, must be given the strongest interpretation against the insurer which it will reasonably bear."

It must be remembered that there is no dispute between the plaintiff and the defendant as to the provisions of the bond, and there is no apparent ambiguity in the language of the bond, and the statement found in various decisions to the effect that a fidelity bond of an employee written by a compensated insurer is an insurance contract is confined to cases involving the interpretation of the bond. In other words, the rule applies where there is a dispute between the parties as to the meaning of the provisions of the bond. Here, as above stated, there is no such dispute. To illustrate, the Wisconsin Supreme Court, Maryland Casualty Co. v. Hjorth, 187 Wis. 270, 202 N.W. 665, at page 666 said:

"While it is universally held that the contract of an indemnity company guaranteeing to an employer the fidelity of employes is a contract of insurance (First National Bank of Crandon v. United States Fidelity & Guaranty Company, 150 Wis. 601, 137 N.W. 742; Whinfield v. Massachusetts Bonding & Insurance Company, 162 Wis. 1, 154 N. W. 632; 25 Corpus Juris 1089, and cases there cited), such holdings have generally been in cases involving the rights of the insured against the indemnity company, and have related to a construction of the contract of insurance. In such cases it is held that, when the indemnity company pays the amount of the shortage, it is subrogated to the rights of the employer against the employe. Manifestly the indemnity company acquires no right of indemnity or security against the employe until it was paid the claim of the employer against the employe and been subrogated to the rights of the employer against the employe, in cases where the contract of insurance or indemnity was not written at the request of the employe. In such cases, there being no contractual relations between the employe and the indemnity company, the indemnity company acquires no rights against the employe until subrogation takes place. But is that true where the contract of indemnity is entered into at the request of the employe? Although there is a dearth of authority upon this question, it would seem that, where an employe makes application to an indemnity company to guarantee his fidelity to his employer, the relation of principal and surety, or of principal and guarantor is created just as much as though the application had been made to a private individual and such private individual had executed a bond to the employer. We so hold."

The application of Kelley Ottis Hill upon which the bond in suit was issued is attached to the reply brief of defendant.

The plaintiff, when it accepted the bond sued upon, did so in full knowledge that the statutory law of Arkansas was a part of the contract and that the defendant, by the terms of the bond, had contracted as a surety for Kelley Ottis Hill and agreed that it would pay to plaintiff any pecuniary loss which plaintiff might

---

sustain through any act of fraud, dishonesty, etc., of the said employee. Naturally, the employee, Hill, is the principal and the bond was obtained upon his application and, under the terms of the bond, the defendant guaranteed plaintiff against loss occasioned by the acts enumerated in the bond.

The fact that the defendant received a consideration for the execution of the bond does not militate against the rights of the defendant and, as stated in 50 Am.Jur., "Surety," § 323 at page 1117, "the rights of a surety are to be determined by his legal status as a surety, and not by the reason which may have induced him to enter into that status; the fact that the surety is compensated does not deprive him of his rights under the rules governing the relation of principal and surety; there is no distinction in this respect between compensated and gratuitous sureties * * *."

Under the holding of the Supreme Court of Arkansas in the cases of Donahue v. Arkadelphia Milling Co., 179 Ark. 409, 16 S.W.2d 569; Arkadelphia Milling Co. v. Goddard, 176 Ark. 958, 4 S.W.2d 923; and Shores-Mueller Co. v. Palmer, supra, the defendant was entitled to require that plaintiff comply with the statutes of Arkansas and, plaintiff having failed to do so, the defendant is exonerated from liability. Therefore, the motion for summary judgment should be sustained and the complaint of the plaintiff dismissed.