## MADISON COUNTY FARMERS ASS'N
v.
## AMERICAN EMPLOYERS' INS. CO.
No. 14890.

United States Court of Appeals, Eighth Circuit.

Jan. 26, 1954.

J. H. Evans, Booneville, Ark. (Robert R. Cress, Huntsville, Ark., on the brief), for appellant.

J. S. Daily, Fort Smith, Ark. (Harry P. Daily and John P. Woods, Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant against appellee to recover for the alleged breach of a bond. The parties will be referred to as they were designated in the trial court. The basis of the jurisdiction of the federal court is diversity of citizenship, the requisite jurisdictional amount being involved. In addition to alleging the facts requi-

site to confer jurisdiction on the federal court, plaintiff in substance alleged in its complaint that during the period between and including August 17, 1951 and June 28, 1952, the plaintiff was engaged in the business of selling feed, seed, fertilizer and other farm supplies to persons in Madison County, Arkansas, and in the course of such business necessarily employed a manager whose duty it was, among other things, to collect on plaintiff's account and to safely hold for plaintiff, moneys due plaintiff from the sales made in due course of plaintiff's business as described above; that on the 17th day of August, 1951, plaintiff, having in its employ a certain manager named Kelley Ottis Hill, made application to defendant for its bond of indemnity, and thereupon defendant for the consideration named therein, made and delivered to plaintiff a bond, a copy of which was attached to the complaint, marked Plaintiff's Exhibit "A" for identification and made a part thereof as though set out therein word for word; that between the 18th day of August, 1951, and the 28th day of June, 1952, inclusive, and while said bond was in full force, the said Kelley Ottis Hill, having in his custody and under his control money in excess of $5,000.00, which had been received by him or by other employees under his supervision as such manager of plaintiff's business, to the use of the plaintiff, wrongfully converted the same to his own use and has not accounted for the same to plaintiff though an account therefor has been duly demanded of him, all of which has resulted in damage to the plaintiff in excess of $5,000.00; that said bond was dated August 17, 1951, and was in effect for a period of one year; that plaintiff paid as consideration for said bond the sum of $25.00; that the terms of said bond were such that because of the dishonesty of Kelley Ottis Hill defendant should pay to plaintiff the sum of $5,000.00; that plaintiff has in all ways performed all the conditions of said bond on its part to be performed and has fully demanded payment from defendant of the said sum of $5,000.00, but that same has not been paid, nor any part thereof. Defendant by its answer admitted execution of the bond but denied the allegations with reference to the alleged acts of conversion by plaintiff's employee, Kelley Ottis Hill. By an amended answer it alleged that on April 11, 1953, it served on the plaintiff a notice in writing demanding that plaintiff forthwith commence suit against Kelley Ottis Hill, the principal debtor and other party liable to the plaintiff under bond F–101623 of this defendant, for any defalcations which plaintiff alleged to have occurred under said bond in its complaint filed against the defendant, and pursuant to Ark.Stats.1947, Section 34–333; that plaintiff is a corporation organized under the laws of the State of Arkansas with its principal place of business located in Madison County, Arkansas and that "the said Kelley Ottis Hill is a citizen and resident of Madison County, Arkansas, and has continuously resided in Madison County, Arkansas, from the date of the filing of this action to the present. That plaintiff has failed and refused for more than thirty days following the service of said notice in writing to commence suit against Kelley Ottis Hill in any court, and plaintiff's failure so to do, and to comply with said notice, has exonerated this defendant from liability to the plaintiff under said bond pursuant to the provisions of Ark. Stats.1947, Section 34–334."

The bond contained provision among others that "The American Employers' Insurance Company (hereinafter called Surety), in consideration of an agreed premium, binds itself to pay to Madison County Farm Association, Huntsville, Arkansas, (hereinafter called Employer), the amount of any pecuniary loss which any Employee named in the schedule hereto attached or added thereto as hereinafter provided, may, while in any position and at any location in the service of the Employer, alone or in collusion with others, cause to the Employer, not exceeding however, the amount set opposite the name of such

Employee, through any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or wilful misapplication committed during the one year term commencing on the 17th day of August, 1951, at noon * * *." The bond specifically covered Kelley Ottis Hill, manager, in the amount of $5,000.00.

Subsequent to filing its amended answer defendant filed its motion for summary judgment and in support thereof filed an affidavit showing that the notice referred to in its amended answer requiring plaintiff to commence suit against Kelley Ottis Hill for any defalcations which plaintiff alleged to have occurred under said bond, had been duly served more than thirty days prior to the filing of its said motion and that plaintiff had not commenced any such action.

On consideration of defendant's motion and the briefs of counsel for the respective parties in support and in opposition thereto, the court granted the motion and entered judgment dismissing plaintiff's complaint. From the judgment so entered plaintiff prosecutes this appeal seeking reversal on substantially the following ground: That the court erred in holding as a matter of law that defendant was exonerated from liability because of the failure of the plaintiff to comply with the statutes of Arkansas requiring that "Any person bound as security for another in any bond, bill or note, for the payment of money or the delivery of property, may at any time after action hath accrued thereon, by notice in writing, require the person having such right of action, forthwith to commence suit against the principal debtor, and other party liable." Section 34-333, Ark.Stats.1947. "If such suit be not commenced within thirty (30) days after the service of such notice, and proceeded in with due diligence in the ordinary course of law, to judgment and execution, such surety shall be exonerated from liability to the person notified." Section 34-334, Ark.Stats.1947.

Counsel for plaintiff in their brief assert that the only question involved on this appeal is whether the appellee under the contract sued upon by appellant is a surety within the meaning of Ark. Stats.1947, Sections 34-333 and 34-334. It is conceded that if the defendant is a surety then the above quoted statutes are applicable and the court committed no error in entering judgment dismissing plaintiff's action. It is the contention of plaintiff that the bond sued upon is simply a fidelity bond and as such is an insurance contract rather than a suretyship contract. In Restatement of the Law, "Security", Section 82, suretyship is defined as follows:

> "Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform."

In elucidation of this definition appears the following example:

> "A corporation contracts with the promisee to hold him harmless from loss due to defaults from his employees. This is a contract of suretyship rather than indemnity because it is essentially a tripartite situation involving a promise to answer for the default of another."

In support of plaintiff's contention it is pointed out that the defendant was compensated for its undertaking and being so compensated it is not entitled to have its contract strictly construed in its favor. The bond, we think, cannot be so limited in its scope as to be characterized simply as guaranteeing the fidelity of the employee Kelley Ottis Hill. In fact the bond specifically provides that the company will pay the amount of any pecuniary loss which this employee may cause to the employer through any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction, or wilful misapplication. In the instant case Hill was charged with conversion of property belonging to the plaintiff. There was a primary obligation on the part of Hill

to account to plaintiff for the property so converted and the bond in effect was an undertaking to answer for the debt, default or miscarriage of another. This, we think, created a suretyship. The character of the contract was not affected by the fact that it was executed by a corporation, nor indeed by the fact that the corporation was a compensated surety. It is true that a compensated surety is not entitled to invoke the rule of strict construction in its favor but here there is no controversy as to the construction of the bond so far as creating liability is concerned. It is neither ambiguous nor uncertain. Touching this phase of the case the trial court in its memorandum opinion said, "It must be remembered that there is no dispute between the plaintiff and the defendant as to the provisions of the bond, and there is no apparent ambiguity in the language of the bond, and the statement found in various decisions to the effect that a fidelity bond of an employee written by a compensated insurer is an insurance contract is confined to cases involving the interpretation of the bond. In other words, the rule applies where there is a dispute between the parties as to the meaning of the provisions of the bond. Here, as above stated, there is no such dispute." 112 F.Supp. 753, 760.

The applicable law is well stated in the article on suretyship in Volume 50, Am.Jur., Section 313, at page 1108, reading in part as follows:

"While it is a rule that the courts, in construing an ambiguous provision in a compensated surety contract, apply the rules applicable to insurance contracts, and while insurance contracts are in many respects similar to surety company contracts, yet, it is said, there is a wide difference between the two contracts. Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event; whereas a contract of suretyship is one to answer for the debt, default or miscarriage of another, and the nature of the contract is not altered because made by a corporation for compensation. The contract creates a tripartite relation between the party secured, the principal obligor, and the surety, and the rights, remedies and defenses of a surety cannot be disassociated from this relationship although the contract is called one of insurance. * * *"

This pronouncement expresses, we think, in principle the law of Arkansas. The trial court was of that opinion and cited in support of its conclusion Shores-Mueller Co. v. Palmer, 141 Ark. 64, 216 S.W. 295; Arkadelphia Milling Co. v. Goddard, 176 Ark. 958, 4 S.W.2d 923; Donahue v. Arkadelphia Milling Co., 179 Ark. 409, 16 S.W.2d 569; and Fausett Builders v. Globe Indemnity Co., 220 Ark. 301, 247 S.W.2d 469. In Donahue v. Arkadelphia Milling Co., supra, the Supreme Court of Arkansas had before it for consideration a bond which among other things provided as follows:

"That we the undersigned—acknowledge ourselves indebted to the Arkadelphia Milling Company, of Arkadelphia, Arkansas, in the sum of five thousand and no/100 $5,000.-00 dollars same to be void upon the following terms and conditions:

"Whereas, Jack Goddard of 1201 Marshall St., Little Rock, Ark., has been appointed the city representative of Little Rock and North Little Rock, Arkansas, to handle and sell the products of the said Arkadelphia Milling Company.

"Now if the said Jack Goddard shall faithfully perform the terms of the said contract and account to the said Arkadelphia Milling Company for all money coming into his hands through and by reason of the said contract, then and in that event this instrument shall be null and void, but for any shortage that might occur in his accounts, we con-

sider and acknowledge ourselves bound."

The sureties on the bond claimed exoneration from liability thereunder because the appellee milling company to whom the bond had been given had failed for a period of more than thirty days after demand to bring suit against the principal debtor. In the course of the opinion the court said [179 Ark. 409, 16 S.W.2d 570]:

"Appellants insist that the court erred in not directing a verdict in their favor, and in directing a verdict against them, and the contention must be sustained. The bond and the obligation sued on is such a one as the statute (sections 8287 and 8288, C. & M. Digest) applies to and from liability upon which the sureties or guarantors may be exonerated upon compliance with its terms. Thompson v. Treller, 82 Ark. 247, 101 S.W. 174; Shores-Mueller Co. v. Palmer, 141 Ark. 64, 216 S.W. 295. The sureties or guarantors had the right under the statute, which is part of every such contract, to demand, any time after the action accrued on the bond and before the trial of suit brought thereon against them, that suit be brought against the principal and proceeded with to judgment, etc. Barnett [Bros.] v. Alexander, 150 Ark. 478, 234 S.W. 978."

The latest utterance of the Supreme Court of Arkansas relative to this question that has been called to our attention is the decision of that court in Fausett Builders v. Globe Indemnity Co., supra. In the course of the opinion in that case the court among other things said [220 Ark. 301, 247 S.W.2d 471]:

"It appears plain from the terms of Slavens' contract with Fausett that he, Slavens, was bound to furnish all material and labor and to perform in the manner therein specified, and in the event of failure on the part of Slavens to so perform, then his surety, Globe Indemnity Co., was bound on its bond to do what Slavens was obligated to do under that contract; that is, Globe was bound to 'pay over, make good and reimburse' Fausett for 'all loss and damage' which Fausett 'may sustain by reason of failure on the part of said Principal,' (Slavens) to 'do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal * * * done and performed * * in the manner in said contract specified,' and no more.

"Here, the contract, or bond, takes the form of an ordinary suretyship and is not one of indemnity.

"'Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. * * The terms of the contract of which the surety promises performance must be read into his own contract. The principal's contract and the bond or undertaking of the surety are to be construed together as one instrument. * * * The suretyship contract must be express, as the surety's promise will never be enlarged to cover the implications growing out of the language employed. * * * A surety's liability is always measured by the express terms of his covenant, which is contained in the obligations of his principal as defined in the main contract and any applicable statute, and in the conditions of the bond. The right of recovery against the surety does not extend beyond that against the principal.' Stearns Law of Suretyship, Fifth Edition, pages 1, 13, 14 and 262.

"As was said by this court in Hall v. Equitable Surety Company, 126 Ark. 535, 191 S.W. 32, 34, in distinguishing between an indemnity contract and one of suretyship: 'Where the contract takes the form of *ordinary suretyship*, "the agreement of the surety is that he will do the thing which the principal has undertaken"', whereas, ' "in indemnity contracts the engagement is to

make good and save another from loss upon some obligation which he has incurred, or is about to incur, to a third person, and is not as in guaranty and suretyship a promise to one to whom another is answerable." ' "

■ If it can be said that the precise question presented in the instant case has not been conclusively determined by the decisions of the Supreme Court of Arkansas then "the reasoned opinion of a trial court upon the status of the law of the local state within which it acts should be accorded great weight by this court, and should not be overturned unless the appellate court is clearly convinced that it is erroneous. * * *" Mogis v. Lyman-Richey Sand & Gravel Corp., 8 Cir., 189 F.2d 130, 134; Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40.

■ We agree with the trial court that the defendant under the applicable law of Arkansas was a surety and as such it was "entitled to require that plaintiff comply with the statutes of Arkansas and, having failed to do so, the defendant is exonerated from liability." The judgment appealed from is therefore affirmed.